Ward W. CARROLL et al., Appellants,

v.

Edwin B. CARROLL, Individually and
as Trustee, Appellee.

No. 8105.

Court of Civil Appeals of Texas,
Amarillo.

Feb. 8, 1971.

Rehearing Denied March 8, 1971.

Sanders, Miller & Baker (Dee Miller), Amarillo, for appellants.

Sanders, Scott, Saunders, Brian & Humphrey (Robert H. Smith), Underwood, Wilson, Sutton, Heare & Berry (D. Barry Stone), Amarillo, Williams & Cox (Dale A. Williams), Canyon, for appellee.

ELLIS, Chief Justice.

This is an appeal from an order of the District Court of Carson County, Texas, approving a receiver's sale of approximately 1,280 acres of land comprising substantially all of the corpus of a trust estate created under the provisions of a joint will which expressly prohibited any sale of the trust property except by consent of the trustee and various specified beneficiaries. The appellants challenge the authority of the trial court to place the property in receivership and to order and confirm the sale which they contend was not necessary or justified and effectively destroys the trust estate.

The appellee, Edwin B. Carroll, individually and as sole trustee under a joint will and trust executed by and between himself and his now deceased wife, Miriam Yeates Carroll, instituted suit in the District Court of Carson County, Texas, seeking an order of the court to authorize him as such trustee to sell and convey the land belonging to the trust estate, although express provisions in the will and trust instrument, absent possible relief therefrom by the court, would preclude the proposed sale by the trustee.

The joint will and trust involved herein was executed by and between appellee, Edwin B. Carroll, and his wife on January 3, 1955. On January 22, 1955, the wife died, and the will was duly probated and administered. Under the will all property of appellee and his deceased wife was devised in trust with the appellee as the sole trustee and primary beneficiary for life, upon whose death the remaining property would pass to the secondary beneficiaries who are the eight adult children of Edwin B. Carroll and Miriam Yeates Carroll for their natural life, and then to the ultimate beneficiaries, their grandchildren, all of whom are minors, with the trust terminating when the last of the ultimate beneficiaries reaches the age of thirty. Seven of the secondary beneficiaries participated in these proceedings and are herein generally referred to as appellants.

Pursuant to the terms of the joint will and trust, appellee, Edwin B. Carroll, took charge of the trust property as trustee and primary beneficiary. Among other things, the will and trust contains the following provision:

"* * * The real estate * * * shall not be sold or otherwise disposed of except upon the written consent and request of each and every sane beneficiary who had reached the age of 17 years and each and every trustee which written consent and request shall be made a part of the conveyance it being intended and expected by the clause to permit the disposition of said real estate only when and if conditions should render it unprofitable to the beneficiaries to retain the title to the real estate of which such beneficiaries and the trustees shall be the judge. No lien or liens shall be placed on said real estate, except that existing liens may be refinanced with the same or other lienholders and new liens executed for the purpose of financing irrigation projects on the land."

At the time the inventory and appraisement was filed the land was encumbered by an indebtedness secured by mortgage in the approximate amount of $32,000.00. Pursuant to the provisions of the will and trust, Edwin B. Carroll authorized the

drilling of five irrigation wells on the land and financed the project by the execution of notes, secured by deeds of trust on the land to the Federal Land Bank of Houston, Texas.

From the time of the death of Miriam Yeates Carroll in 1955, through 1966, Edwin Paul Carroll and David Ralph Carroll, two of the sons, were associated with their father in farming the land in question. On January 3, 1967, the father-trustee and these two sons entered into a ten-year lease covering all of the trust land. At approximately the same time, the landlord and tenants entered into a ten-year Cropland Adjustment Program with the Federal Government which provided for withdrawal of 500 acres of the trust land from production of grain sorghums for a period of ten years in consideration of a lump sum payment by the Federal Government of $119,892.50.

The lease agreement between the father-trustee and his sons proved to be unsatisfactory and it was terminated by court order on April 4, 1968, whereupon Edwin B. Carroll, trustee, took immediate possession and control of the trust land. Throughout the period following the death of Miriam Yeates Carroll, there was much "family" dissension over the operation of the farm as well as other matters which need not be detailed here. It is significant, however, that despite considerable effort, it was not possible for the requisite parties to reach an agreement as provided in the will to enable the consummation of a sale of the trust property. Subsequently, the appellee, as trustee and individually, brought his suit seeking authority to sell the land following which various pleadings were filed and orders entered, including appellants' answer denying the allegations of appellee's petition and seeking his removal as trustee, the answer and counterclaim for removal of trustee filed by the court appointed guardian ad litem in behalf of the minor grandchildren born and yet unborn, and a petition in intervention by the United States Government per-taining to its claim for refund of unearned payments under the Cropland Adjustment Program. Thereafter, the trustee filed his petition for receivership. The unpaid balance of the indebtedness in favor of the Federal Land Bank at the time of the filing appellee's petition for receivership was approximately $95,000.00, and the Federal Land Bank had initiated foreclosure proceedings by posting the required deed of trust notices of sale and had advised appellee that foreclosure would occur on November 4, 1969. On October 30, 1969, the trial court entered its order appointing a receiver, authorizing the receiver to make a sale of the property, and enjoining the Federal Land Bank from proceeding with the contemplated foreclosure. On April 11, 1970, this order was modified so as to terminate the injunction against the Federal Land Bank, thereby enabling the Land Bank to post its trustee's notice that a foreclosure sale would be held on May 5, 1970. After extensive hearings on pleadings relating to various proposals for sale of the land, on April 29, 1970, the trial court entered its order approving a contract of sale submitted by the receiver, and from such order, appellants have brought this appeal.

The appellants have briefed five points on appeal; however, one of the points, being the fourth point which pertains to the receiver's bond, is not being pursued, leaving four points urged by the appellants. They assert that the court erred (1) in ordering the land sold in contravention of the clear prohibition against such sale contained in the will; (2) in ordering the land sold without adequate pleading and proof of the need therefor; (3) in exercising its general equitable powers to order a sale of the land when an adequate remedy at law existed to preserve the trust estate and (4) in exercising its general equity powers over the respective interests of the minor beneficiaries of the trust, and over the interest of an alleged non compos mentis beneficiary. In addition to appellee's various counterpoints to the appellants' points of

error, appellee contends that appellants have waived all complaints set out in their points of error because they failed to perfect an appeal from the order appointing the receiver. Also, the receiver, Fancher Upshaw, Jr., and the guardian ad litem, D. Barry Stone, have filed their respective briefs, each adopting the brief of appellee, Edwin B. Carroll, in his crosspoint of error, counterpoints, arguments and authorities submitted in support of the position that the trial court had the jurisdiction and authority to enter the order approving the receiver's sale of the land, that such order was not an abuse of the court's discretion and that appellants had failed to perfect an appeal from the order appointing the receiver.

In considering appellee's contention that appellants failed to perfect an appeal from the trial court's order of October 30, 1969, appointing a receiver in this cause, we find that the record does not disclose that any appeal was taken from that order by appellants herein or any other party to the suit. It is particularly noted that the Federal Land Bank, as the enjoined mortgagee, did not appeal from this order, and foreclosure action was suspended until the injunction was terminated by the court on April 11, 1970.

 It is well recognized, and citation of authority therefor is not necessary, that an order appointing a receiver is interlocutory, and appeal may be taken from such interlocutory order if specifically authorized by statute or rule. Article 2250, Vernon's Ann.Tex.St., expressly permits an appeal from an interlocutory order of the district court appointing a receiver, and, under Rule 385, Texas Rules of Civil Procedure, any appeal from such interlocutory order must be perfected in twenty days. Subsequent to the order appointing the receiver, appellants filed various motions seeking to set aside the appointment, and by such action appellants waived all questions with respect to the regularity of the order appointing such receiver. Whitaker Oil Co. v. Ward, 396

S.W.2d 158 (Tex.Civ.App.—Tyler 1965, motion to certify overruled, 398 S.W.2d 155); Cocke v. Naumann, 188 S.W.2d 781 (Tex.Civ.App.—Dallas 1945, writ ref'd n. r. e.); San Angelo Hilton Hotel Co. v. B. B. Hail Bldg. Corp., 60 S.W.2d 1049 (Tex.Civ.App.—Austin 1933, no writ).

In Lauraine v. First National Bank of Whitney, 204 S.W. 1022 at page 1025 (Tex.Civ.App.—Galveston 1918, no writ) this rule is stated:

"If an appellate court should revise a judgment of a trial court overruling a motion to vacate an order appointing a receiver made long after the receiver was appointed, and based upon objections which should have been made at the time the appointment was made, and *which do not affect the jurisdiction of the court or render the order granting the receivership void,* such ruling would, in effect, abrogate the statute which provides that an appeal from an interlocutory order appointing a receiver shall be taken within 20 days after the order is entered of record." (emphasis added)

It has further been held that by reason of failure to perfect an appeal from an order appointing a receiver, the order may not be attacked by an appeal from another interlocutory order such as an order to vacate the receivership. Lloyds of Texas v. Bobbitt, 40 S.W.2d 897 (Tex.Civ.App.—Dallas 1931, writ dism'd, 55 S.W.2d 803, 1932); Whitaker Oil Co. v. Ward, supra; and Lauraine v. First National Bank of Whitney, supra. It is further noted that in the instant case, appellants themselves submitted to the receiver certain proposals for purchase of the land under the then pending receivership proceeding. In the light of all the foregoing, we hold that appellants have waived all complaints and objections pertaining to the trial court's appointment of the receiver, provided their points of error do not point up matters affecting the jurisdiction of the court or which might otherwise render the receivership void.

In recognition that the "extraordinary remedy" of receivership is generally regarded as a harsh "last ditch" approach toward a solution of a problem confronting a court, and realizing that a court's jurisdiction and its exercise of sound discretion in these areas must come within the limits of rather delicate guidelines, for the purpose of determining the extent, if any, that the appellants' points of error are relevant to matters pertaining to the court's jurisdiction over the subject matter or parties involved and regarding the alleged abuse of judicial discretion in its approval of the receiver's sale, the respective points submitted by appellants shall be separately considered.

In their first point, appellants take the position that the sale of the land by the receiver as ordered by the court is in direct contravention of the clear prohibition against a sale contained in the trust instrument and that the existing circumstances were not sufficient to justify the court to invoke its equitable power in ordering a sale of the land. We agree that the court has no authority or discretion to concern itself solely with the needs of the trustee and life beneficiary. Johns v. Johns, 172 Ill. 472, 50 N.E. 340; Kennedy et al. v. Pearson et al., 109 S.W. 280 (Tex.Civ.App., 1908, writ ref'd).

In Kennedy et al. v. Pearson et al., supra, cited in appellants' brief the court stated, among other things, that the showing that the proposed sale of the property would be a profitable investment, or that the sale and re-investment would yield a larger income does not constitute sufficient reason for a court of equity to order the sale of trust property. The court, however, further stated:

"If the showing were made that the property itself is wasting and that a sale of it is essential to its preservation, or if it be shown that the purposes for which the trust was created would fail unless a sale of the property be authorized, and that the particular property

be converted into money or other character of property, then a court of equity, in the exercise of its inherent powers as such, might order a sale even though it should not have been provided for by the terms of the instrument by which the trust was created."

The appellants also cite the case of American Trust Co. v. Nicholson, 162 N.C. 257, 78 S.E. 152, (1913), in which the evidence showed that agricultural land held in trust had subsequently become more suitable for residential purposes, resulting in a substantial increase in taxes in consequence of which further utilization of the land for its originally intended agricultural purposes would no longer produce sufficient income to meet the demands. The court authorized the sale because of the changed conditions which had actually made the continuation of ownership of the trust property burdensome. Appellant further cites Mayall v. Mayall, 63 Minn. 511, 65 N.W. 942, wherein the appellate court pointed out that the trial court in exercising its power as a court of equity must not destroy a trust through the power of sale and that whatever action the court takes in that respect must be done to preserve the trust from destruction. It is stated in such case:

"The power of the court is exercised not to defeat or destroy the trust, but to preserve it. Even in the case of an absolute sale, the trust is not destroyed. There is merely a change in the form of the trust property."

Thus, it is recognized that a court of equity has the inherent power and authority to order trust lands sold even against a direct prohibition of sale contained in the trust where to do so would preserve and protect the value of the trust property, if there is imminent danger of the trust corpus wasting or being destroyed or effectively eliminated. Especially is this true where there has been such a change of circumstances since the creation of the trust that the corpus is in serious

jeopardy. Kennedy v. Pearson, supra; Smith v. Drake, 94 S.W.2d 236 (Tex.Civ. App.—Austin 1936, no writ); Suiter v. McWard, 328 Ill. 462, 159 N.E. 799; American Trust Co. v. Nicholson, supra; 168 A.L.R. 1018, 1044.

The evidence indicates that by reason of the changed conditions, together with the emergence of so much family dissension in connection with the various problems and frustrations confronting this estate and its management and/or disposition, to the extent of precluding any reasonable likelihood of an adjustment of differences or agreement on a sale as permitted under the trust instrument, or any other foreseeable solution to the impasse, it appears that the "extraordinary remedy" of receivership whereby a "third party" receiver would administer and liquidate the estate subject to the supervision and orders of a court of equity was inevitable. This situation is somewhat analogous to that discussed in Hammond v. Hammond, 216 S.W.2d 630 (Tex. Civ.App., Fort Worth, 1948, no writ) where it was pointed out that a court of equity may properly take jurisdiction to wind up the affairs of a corporation and sell the assets on the grounds of dissensions among the stockholders when it reasonably appears that there is no reasonable likelihood of protecting the rights of minority stockholders short of such sale and liquidation of the property of the corporation. Thus, by reason of the imminence of the foreclosure sale, the appellee sought relief from the court by means of his petition for the receivership to enable a "third party," the receiver, to sell the land at a private sale on terms acceptable to the court. In view of the local publicity in Carson County concerning the Cropland Adjustment Program then existing upon the land, including the fact that the United States Government had intervened in the cause then pending which had arisen out of the existing family dissension concerning the affairs of the trust estate, cast considerable doubt that the land would bring more than a small percentage of its true value at the contemplated foreclosure sale at public auction.

Under the cases above cited and in the light of the conditions disclosed by the evidence, we hold that sufficient circumstances were present to justify the trial court's exercise of jurisdiction under its inherent equitable powers to appoint the receiver and authorize a private sale of the property, despite the prohibition contained in the trust instrument, and to enjoin interference therewith as set out in its order entered on October 30, 1969. Accordingly, appellants' first point is overruled.

The appellants further contend, in their second point, that the court erred because the pleading was inadequate and the proof of need of such action was insufficient to authorize the court's order of sale of the property. Specifically, the complaint is made that appellee failed to allege and prove that the land was wasting and that the purpose for which the trust was created would fail unless the sale of the property was authorized. We do not agree with this contention.

In this case, the appellee had filed Plaintiffs' First Amended Petition seeking authority as trustee to sell the property grounded upon allegations concerning the operation of the farm including the unsatisfactory relationship with the two sons who had rented the land, among which was the allegation that when the Cropland Adjustment Program was put into effect, taking 500 acres out of cultivation, the entire lump sum proceeds thereof was paid over to appellants and none went to appellee after an understanding with the father, appellee herein, that the money was to be used for the improvement, betterment and operation of the farm, but was used otherwise, all resulting in conditions detrimental to the land, affecting its productivity and culminating in the delinquency status of the payments owing to the Federal Land Bank, all leading toward

ultimate waste and depletion of the trust property. Subsequently, appellee, as trustee and individually, filed his verified petition for receivership, which specifically and completely incorporated all of the allegations as to facts, parties and prayers for relief contained in Plaintiffs' First Amended Petition, and contained, as well, the additional grounds of imminence of foreclosure. This verified petition for receivership invoked the provisions of Article 2293, Section 1 and Section 4, V.A.T.S., as well as the general equitable jurisdiction of the court. Article 2293, Sections 1 and 4, provide as follows:

"Receivers may be appointed by any judge of a court of competent jurisdiction of this State, in the following cases:

"1. * * * between partners or other jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured.

\* \* \* \* \* \*

"4. In all other cases where receivers have been appointed by the usages of the court of equity."

The court held its hearing on the petition after notice to all interested parties. No party, including appellants, who were represented by counsel of their choice, filed any sworn pleading opposing the *petition* for receivership, and, at the hearing offered no evidence opposing the same. The above described uncontroverted verified pleading was offered and received into evidence at the hearing without objection.

■ A verified pleading for receivership, which in the instant case had incorporated all of the allegations set out in Plaintiffs' First Amended Petition, along with the additional grounds above mentioned, may all be considered by the court as evidence and taken as competent to determine if the receivership and proposed

sale thereunder was authorized. Friedman Oil Corp. v. Brown, 50 S.W.2d 471 (Tex. Civ.App.—Texarkana 1932, no writ) ; Ellis v. Filgo, 185 S.W.2d 739 (Tex.Civ.App.— Dallas 1945, no writ). Further, the action of the trial court in granting the petition for receivership and authorizing the sale will not be disturbed unless a clear abuse of discretion is shown after indulging every reasonable presumption in favor of the court's action. Strategic Minerals Corp. v. Dickson, 320 S.W.2d 882 (Tex.Civ.App. —Austin 1959, writ ref'd n. r. e.) ; Jones v. Springer, 256 S.W.2d 1016 (Tex.Civ.App. —Amarillo 1952, no writ) ; Lines v. Robinson, 91 S.W.2d 1108 (Tex.Civ.App.—Fort Worth 1936, no writ).

■ After considering the status of the pleadings and the evidence admitted without objection, it would not be unreasonable for the trial court to find that not only immediate detriment and harm, but even total loss of the assets of the trust estate was imminent. Under these circumstances, the order entered appears to be justified as an appropriate exercise of the court's equitable powers. For these reasons, we overrule appellants' second point.

The appellants assert in their third point that the court's exercise of its equitable power in ordering the sale was improper because of the existence of an adequate remedy at law. Appellee contends that upon his showing of a vested interest in the land, both as trustee and prime beneficiary, under the above described existing circumstances, a receiver should be appointed pursuant to Section 1 of Article 2293, V.A.T.S., because the property was "in danger of being lost, removed or materially injured." Further, appellee not only insists that the existing circumstances sufficiently establish grounds for such statutory receivership, but also that further proof of the lack of another adequate remedy was unnecessary, citing the cases of Whitson Co. v. Bluff Creek Oil Co., 256 S.W.2d 1012 (Tex.Civ.App.—Fort Worth 1953, no writ), Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.

2d 800 (1940). It is also noted that appellee has invoked Section 4 of Article 2293, V.A.T.S. which authorizes the appointment of a receiver in "all other cases where receivers have heretofore been appointed by the usages of the courts of equity," seeking thereby, in effect, the general quitable jurisdiction of the court.

Although the trial court had by its order of October 30, 1969, enjoined the Federal Land Bank from its threatened foreclosure, the record reflects that due to the many problems encountered in seeking to negotiate a satisfactory private sale, the receiver had been unable to submit a contract suitable to the court. Upon insistence of the Federal Land Bank that its foreclosure not be longer delayed, the court entered its order of April 11, 1970, modifying the prior order of October 30, 1969, and the Land Bank proceeded to post its trustee's notice for a foreclosure sale on May 5, 1970. After April 11, 1970, it was evident that in order to salvage as much of the estate as possible immediate action was required. Since it was determined that the 1,280 acres of land should not be sold piecemeal, it is significant that the farm was burdened with a participation in the Federal Crop Land Adjustment Program, whereby 500 acres of the farm were diverted from grain sorghum production for a period of 10 years, beginning May, 1966.

It appears that a "sale" of the property was imminent under the alternatives of either a foreclosure sale on May 5, 1970, or by acceptance of one of the proposals for private sale. Only the general aspects of the submitted proposals for private sale shall be here discussed. Certain offers were submitted which would either leave substantially nothing in the trust after the payment of the Federal Land Bank indebtedness and expenses of receivership, or presented such problems, as unpractical or impossible repayment requirements for a loan to refinance the Federal Land Bank notes, or requirements of the lending institution that it be irrevocably appointed as trustee to continue in such capacity until the trust terminated without regard to compliance with the provisions of the Texas Trust Act. Another proposal submitted for sale of the land was that of E. H. Lindsey & Associates for a total consideration of $195,000.00 to be paid in cash, part of which would be used to transfer the lien from the Federal Land Bank to the purchasers and the balance payable upon approval of title and delivery of deed. Also, it is here pointed out that under this contract the receiver is protected from nonperformance by the purchaser and against an untimely foreclosure under the Federal Land Bank Deed of Trust. The court entered its order approving the latter (Lindsey) contract of purchase on April 29, 1970. Although there is testimony indicating that the property was worth more money than the sales price under the Lindsey Proposal, all of the circumstances must be considered, and the matter viewed from the standpoint that any purchaser was faced with the problems of the pending litigation, together with the urgency occasioned by the imminent foreclosure on May 5, 1970, along with the claim by the Federal Government for its re-payment under the Cropland Adjustment Program, and, at the same time, seeking to preserve the greatest amount possible of the corpus of the trust estate. The record indicates that this situation does not fulfill a "realtor's dream" of a simple real estate transaction, but it is quite obvious that prospective purchasers would be reluctant to become involved in the complex legal proceedings necessary to ultimately obtain a clear and marketable title to the land. Appellant contends that under the present status of the case, the outstanding claim of the United States Government in the sum of approximately $75,000.00 in connection with the Cropland Adjustment Program will be paid by the trust out of the proceeds of the sale. This is a disputed matter in this litigation yet to be determined in a trial of this case on its merits.

■ The evidence indicates a diligent effort on the part of the receiver to sell the trust land for the highest price possible under the existing circumstances. The Lindsey Proposal appeared to be the best of the alternatives available. Although the Lindsey Proposal was not a perfect solution to all of the problems of this "frustrating" situation facing the trust estate, it certainly appears more acceptable than a forced sale at a deed of trust foreclosure. We hold, therefore, that the trial court did not abuse its discretion in approving the sales contract ultimately recommended by the receiver.

In their last point of error, appellants have attacked the jurisdiction of the District Court in ordering the trust land sold to the extent of the interest of the defendant beneficiaries who are minors and also with respect to the interest of an alleged non compos mentis beneficiary.

■ A court appointed guardian ad litem has appeared in this cause and filed written answers in behalf of the minor beneficiaries of the trust, and urges that the action of the trial court in approving the receivers sale be upheld. Under the Texas Trust Act, Article 7425b–24(A), V.A.T.S., the district courts are granted jurisdiction over litigation involving the administration of trusts. Also, under such Act, the district court is already recognized as the proper forum to dispose of questions pertaining to interests of minors and incompetents in litigation involving a trust estate.

The appointment of a guardian ad litem in this situation is governed by Rule 173, T.R.C.P., which provides:

"When a minor, lunatic, idiot or a non-compos mentis may be defendant in a suit and has no guardian within this State, or where such person is a party to a suit, either as plaintiff, defendant or intervenor and is represented by a next friend or a guardian who appears to have an interest adverse to such minor * *, the court shall appoint a guardian ad litem for such person and shall allow him a reasonable fee for his services to be taxed as a part of the costs."

Article 7425b–25(D), V.A.T.S. contemplates the utilization of guardians ad litem in cases of this type, without the necessity of intervention by the probate court. In the case of Ashby v. Standard Pipe and Supply Company, 56 S.W.2d 218 (Tex. Civ.App.—Texarkana 1932, writ ref'd), it was held that a trustee's sale of trust property could be validly made without consent of a probate court after a beneficiary had been adjudged insane. Appellants cite the case of Kennedy v. Pearson, 109 S.W. 280 (Tex.Civ.App., 1908, writ ref'd) in connection with their questioning the jurisdiction of the district court to order the sale of a minor's interest in trust property. In that case, however, the question regarding the district court's jurisdiction related to a "convenience" sale for the benefit of the minor beneficiary as such, which is clearly distinguishable from a situation involving a sale by a court of equity to preserve and prevent the complete destruction or elimination of the entire corpus of the trust estate. We hold that in this instance the district court has jurisdiction over a proceeding relating to the equitable power of a court to preserve or prevent elimination of the real property corpus of the trust estate.

■ With respect to the jurisdiction of the court over the alleged incompetent beneficiary, it is noted that, pursuant to request of the next friend of such alleged incompetent, the trial judge, although not required to do so, made and filed certain findings of fact and conclusions of law concerning this aspect of the case, which in this case are to be considered as binding on the party requesting same. Among other

things, the trial court found that the said alleged incompetent was in her own right one of the original defendants in the cause; that she participated in the cause by and through her attorneys of record and by signing instruments filed in the cause; that she was represented by competent counsel; that no suggestion was made that such alleged incompetent, Frances A. Carroll, was a non compos mentis until on or about May 20, 1970, when pleadings concerning same were filed by a next friend subsequent to all the various hearings had in this cause, including the court's order approving the sale of the trust property which had been duly entered on April 29, 1970, and appeal therefrom had already been perfected. The trial court further found that no meritorious defense peculiar to the alleged incompetent and not applicable to all defendants was presented. When she was represented throughout those proceedings by counsel, along with other parties, no facts were submitted to indicate that the trial court's order approving the receiver's sale of the trust corpus could prejudice any rights or interest she may have as a beneficiary under such trust.

For the reasons above stated we overrule appellants' point seeking to attack the jurisdiction of the district court in ordering the sale of the trust property insofar as it may affect the interests of minor beneficiaries or the interest of the alleged non compos mentis beneficiary.

We hold that the trial court had jurisdiction to hear this matter under its general equitable powers; that all necessary parties were before the court; and that abuse of the court's judicial discretion was not established.

The order of the trial court approving the receiver's sale of the trust property is affirmed.

REYNOLDS, J., not sitting.