NO. 07-04-0308-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MARCH 7, 2005



______________________________



IN RE THE W. T. WAGGONER ESTATE


_________________________________



FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;



NO. 19,626; HONORABLE TOM NEELY, JUDGE


_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

OPINION


 This is an interlocutory appeal of an order appointing a receiver for the W. T.
Waggoner Estate and giving the receiver "the duty, responsibility and power," subject to the
court's supervision and direction and subject to other provisions of the order, to "sell all
assets" of the Estate. We will affirm the trial court's order.

Background

 The W. T. Waggoner Estate is an entity formed by Articles of Agreement and
Declaration of Trust (hereinafter, the "Articles") dated March 31, 1923, among W. T.
Waggoner and members of his family. The Estate sometimes has been referred to in this
litigation as a business or Massachusetts trust. (1) Originally, and at other times, the Estate
has had a trustee. It also has shareholders and directors. It apparently is treated for
federal tax purposes as a corporation. The parties agree the Texas Trust Code does not
apply to the Estate, (2) and for purposes of this appeal under Texas law it is to be treated as
a partnership subject to the Texas Revised Partnership Act. (3) 

 The Estate was created for an original term of twenty years but its term was
extended by subsequent amendments to the 1923 Articles. By a 1948 amendment, the
Estate's existence was extended through March 31, 1983. By 1981, half the outstanding
shares of the Estate were owned by A. B. Wharton, III (the "Wharton shares"), and half by
Electra Waggoner Biggs and the trustees of trusts created by her parents E. Paul
Waggoner and Helen Buck Waggoner (the "Biggs shares"). On April 1 of that year, the
Articles were further amended and Bylaws for the Estate were adopted. The amended
Articles extended the term of the Estate through March 31, 2003, subject to prior
termination by any shareholder "pursuant to agreement of the Shareholders." The Bylaws
spelled out that "[n]otwithstanding the intention and desire of the shareholders that the
Estate continue in existence for the full term" [through March 31, 2003], either the holders
of a majority of the Wharton shares or the holders of a majority of the Biggs shares had the
"absolute right, with or without cause," to terminate the Estate as of any one of three dates,
on written notice of intention to terminate.

 In February 1989, Wharton gave written notice of his intention to terminate the
Estate, selecting March 31, 1991, as the termination date. Charles M. Prather, who had
served as the Estate's trustee since April 1, 1981, resigned as trustee in April 1989. The
office of trustee has been vacant since Prather's resignation. On March 13, 1991, the
Biggs shareholders filed suit seeking the appointment of a receiver for the Estate. By
agreement, the termination date of the Estate was extended to a date later in 1991, but the
parties made no express agreement for its extension beyond that date. The Estate
nonetheless has continued to operate its properties, (4) under the supervision of its directors. (5) 

 The trial court entered an agreed scheduling order in September 1992 that abated
the case for 120 days, requiring the parties to explore an agreed resolution of the matters
in dispute, and set the case for trial a year later. A 1997 agreed order noted that the case
had been continued on the court's docket without a specific resetting so the parties could
pursue settlement, and provided either party could request a trial setting at any time if
settlement prospects no longer justified further postponement. 

 Electra Waggoner Biggs died in April 2001. In January 2003, the Biggs
shareholders (6) filed a third amended petition for appointment of a receiver, and followed that
in March 2003 with a motion for partial summary judgment. That motion stated Wharton
"has sometimes contended in this litigation that the assets of the W. T. Waggoner Estate
should be divided in kind or partitioned between the parties." The motion asserted
undisputed evidence established that the governing documents require liquidation of the
assets of the Estate and distribution of the proceeds in the absence of agreement of the
shareholders to a division in kind of particular assets. The evidence submitted by the Biggs
included the 1923 Articles, and amendments to that document including the 1981
amendments, and the 1981 Bylaws. The evidence also included a May 2002 deposition
given by Wharton.

 Wharton opposed the Biggs' motion. After an April 2003 hearing, the court signed
an order of partial summary judgment dated May 8, 2003, decreeing that an event had
occurred requiring the winding up of the Estate; that there then was no agreement among
the shareholders for partition or division in kind of any particular assets of the Estate; and
that except to the extent such an agreement was reached, all of the assets of the Estate
would be sold in liquidation and the proceeds distributed to the shareholders after
satisfaction of obligations of the Estate.

 In February 2004, the Biggs shareholders filed a motion for the appointment of John
M. Greer as receiver. Wharton filed a response opposing Greer's appointment and filed
a motion to "correct" the court's May 8, 2003, order of partial summary judgment. The
motion to correct urged the court to delete the language requiring all Estate assets to be
sold absent agreement among the shareholders.

 The court conducted an evidentiary hearing on March 17, 2004, on the Biggs' motion
for Greer's appointment as receiver and Wharton's motion to correct. Wharton testified at
that hearing. By a March 29 letter, the court notified the parties of its decision not to
appoint Greer as receiver. Noting that the parties had stated in open court that a receiver
was necessary, the court stated in the letter its intention, subject to objection, to appoint
Wilson D. Friberg as receiver. The court set a hearing for May 4 to hear objections to
Friberg's appointment, and to hear further "argument and authorities" on Wharton's motion
to correct. Neither side voiced objection to Friberg's appointment at the May 4 hearing, but
the parties presented extensive argument concerning the powers that should be given him.

 On May 14, the court signed the order made the subject of this appeal. It appointed
Friberg as receiver. The order states that the receiver "shall have, subject to the Court's
continued supervision and direction, the duty, responsibility and power, subject to [a later
provision of the order], to sell all assets of the W. T. Waggoner Estate, except to the extent
that the [shareholders] agree to a partition or division in kind of particular assets," and
states the appointment is made in accordance with Art. 6132b-8.03 of the Texas Revised
Partnership Act. (7) The later provision of the order states that the receiver shall consummate
no sale, irrespective of value, of any real or personal property of the Estate without the
court's approval, after notice and hearing. 

 Notwithstanding the appointment of the receiver, the order directs that day-to-day
operation of the Estate is to remain, subject to further order of the court, under the control
and direction of the shareholders through the directors. 

Issue on Appeal 

 On appeal, Wharton challenges neither the necessity for a receiver nor the selection
of Friberg to serve in that capacity. He acknowledges the parties agreed the appointment
of a receiver was necessary because of their inability to reach any other agreed course for
winding up the Estate. Wharton states his single issue as follows:

 The trial court erred in ordering a receiver for the W.T. Waggoner Estate to
sell all of the assets of the Estate in liquidation when, as a matter of law,
neither the Estate's governing documents nor the controlling law provide for
or allow a sale of all of the assets.


The preliminary statement in his brief restates the relevant issue as "How should the assets
of the W.T. Waggoner Estate be transferred to the Waggoner family when the Estate is
wound up?" It succinctly states the parties' positions: "Appellees [the Biggs shareholders]
suggest that the entire corpus of the Estate, including 520,000 acres of real property, be
sold and the cash proceeds distributed among the shareholder groups. Appellant Wharton
insists he has a legal right, after the liabilities of the Estate are extinguished, to receive his
share or, at a minimum, some portion of the Estate 'in kind' without a forced sale of all the
Estate's assets." (8) 

Applicable Law

 We review the court's order appointing a receiver under an abuse of discretion
standard. See Balias v. Balias, Inc., 748 S.W.2d 253, 256 (Tex.App.-Houston [14th Dist.]
1988, writ denied); Carroll v. Carroll, 464 S.W.2d 440, 447 (Tex.Civ.App.-Amarillo 1971,
writ dism'd); Strategic Minerals Corp. v. Dickson, 320 S.W.2d 882, 884 (Tex.Civ.App.-
Austin 1959, writ ref'd n.r.e.). A court may abuse its discretion by ruling arbitrarily,
unreasonably or without reference to any guiding rules and principles, or without supporting
evidence. Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998); Morrow v. H.E.B., Inc. , 714
S.W.2d 297, 298 (Tex. 1986); Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
241-42 (Tex. 1985). When conducting an abuse of discretion review, we examine the
entire record. Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996);
Simon v. York Crane & Rigging Co., 739 S.W.2d 793, 795 (Tex. 1987).

 The law applicable to construction of contracts has been applied to partnership
agreements, Park Cities Corp. v. Byrd, 534 S.W.2d 668, 672 (Tex. 1976), and we will apply
it here. Neither side contends the governing documents are ambiguous. We agree they
are not ambiguous. The construction of an unambiguous contract is a matter of law for the
court. Edwards v. Lone Star Gas Co., a Div. of Enserch Corp., 782 S.W.2d 840, 841 (Tex.
1990); Cross Timbers Oil Co. v. Exxon Corp., 22 S.W.3d 24, 26 (Tex.App.-Amarillo 2000,
no pet.). When a court construes a written contract, its primary concern is to ascertain the
true intentions of the parties as expressed in the instrument. Coker v. Coker, 650 S.W.2d
391, 393 (Tex. 1983). In so doing, the court considers the entire writing, seeking to
understand, harmonize and give effect to all its provisions so that none are rendered
meaningless. Id. at 393; Cross Timbers, 22 S.W.3d at 26. See Southland Royalty Co. v.
Pan Am. Petroleum Corp., 378 S.W.2d 50, 53 (Tex. 1964). All the shareholders signed the
amendments to the Articles dated April 1, 1981, and the Bylaws dated the same date. We
will construe the amended Articles and the Bylaws together. See Jones v. Kelley, 614
S.W.2d 95, 98 (Tex. 1981) (stating general rule that instruments executed at same time,
for same purpose and in same transaction are read and construed together), cited in Fort
Worth Ind. Sch. Dist. v. City of Fort Worth, 22 S.W.3d 831, 840 (Tex. 2000).

Document Provisions

Articles

 We find several provisions of the amended Articles and the Bylaws pertinent to the
issue presented. We begin with Article IV, Section 1 of the Articles, which states, in
relevant part:

 Section 1. This Trust shall first continue for its original term of twenty
years; and at the end of said period of time, the term of this Trust shall
thereupon and then be extended and continued . . . for a term ending at
midnight on the 31st day of March, 2003, but subject to prior termination
pursuant to agreement of the Shareholders. . . . Upon the expiration of the
last mentioned period of time, or upon earlier termination, the Trustee shall
proceed to wind up the affairs of the Trust and to liquidate its assets and
distribute the proceeds of same among the then existing Shareholders. 
Notwithstanding the expiration of the term of the Trust or any voluntary
dissolution of the Trust, the Trust shall continue in existence as an entity until
completion of liquidation and distribution of its assets; and all of the powers
herein granted to the Trustee and which may be necessary, convenient or
useful in winding up the affairs of the trust, in liquidating and distributing its
assets, or in carrying on the business operations of the Trust prior to final
distribution, shall remain in full force and effect until the completion of such
liquidation and distribution. Subject to the approval of the Shareholders, the
Trustee may distribute to the Shareholders in kind, rather than to liquidate,
all or any part of the assets of the Trust as they exist at the termination of the
Trust or at any time thereafter; but in such event the Trustee shall be entitled
to adequate indemnification against any unpaid or unsatisfied obligation,
whether fixed or contingent, of the Trust Estate. Bylaws

 The preamble to the Bylaws adopted April 1, 1981, reads as follows: 

 Reference is made to the Articles of Agreement and Declaration of
Trust of W. T. Waggoner Estate, as amended effective April 1, 1981. In
particular, reference is made to the provisions of Section 5 of Article IV of
said Articles as amended, which states that the Articles of Agreement and
Declaration of Trust, together with the bylaws of the Estate, shall constitute
the instruments governing the relationships between the trustee, the board
of directors, and the shareholders. 


 These bylaws are adopted for the purposes of supplementing the
provisions of the Articles and the providing means for the coordination of the
activities of the trustee, the directors, and the shareholders. As among such
parties, the provisions of these bylaws shall control over any inconsistent
provisions in the Articles. 


 Relevant provisions of the Bylaws include those contained in Section 1 (entitled
"Early Termination of the Estate; Control of Termination Procedures") of Article IV (entitled
"Miscellaneous"), paragraphs 1(d) and 1(e) of which read as follows: 

 (d) If a notice of intention to terminate is executed and delivered by
either group of shareholders, then all shareholders, the directors, and the
trustee shall endeavor to resolve the problems giving rise to such notice. If
the parties are unable to effect a resolution, the parties shall explore the
available alternatives to a liquidation and distribution of the Estate assets,
including such of the alternatives listed in paragraph (d) of Section 1 of Article
II hereof as may be appropriate. In the absence of a revocation of any such
notice of intention to terminate, and in the absence of any agreement of the
shareholders on an alternative to liquidation and distribution, the shareholder
group giving such notice shall be entitled, after the date specified for
termination, to a liquidation and distribution of the assets of the Estate. The
processes of liquidation and distribution may be commenced prior to such
date by consent of the shareholders.

 

 (e) Upon termination or dissolution of the Estate, whether as a result
of early termination under this Section 1 or at the expiration of the term stated
in Section 1 of Article IV of the Articles, the trustee shall be subject to the
control and direction of the board of directors in carrying out the processes
of winding-up the affairs of the Estate, liquidating or dividing its assets,
discharging its obligations, and distributing the remaining assets to the
shareholders. Except to the extent that the holders of a majority of the
Wharton stock and the holders of a majority of the Biggs stock agree to a
partition or division in kind of particular assets, all of the assets of the Estate
shall be sold and the proceeds (after satisfaction of the liabilities and
obligations of the Estate) distributed to the shareholders. 

 

 Paragraph (d) of Section 1 (entitled "Appointment and Tenure") of Article II (entitled
"The Trustee") of the Bylaws reads in part as follows:

 (d) If the office of trustee becomes vacant for any reason and the
directors are unable to agree on the election of a successor trustee . . . then
the directors and the shareholders shall attempt to resolve the deadlock by
consideration of all of the alternatives which may be available, including
submission to arbitration, sale of stock among the shareholders, sale of stock
to a third party, merger, sale of the assets of the Estate, division in kind or
other form of reorganization, appointment of a trustee or agent for the limited
purpose of liquidating the assets of the Estate, and such other alternatives
as may be proposed by any party. If, within a period of three months from
the date the vacancy occurs, the vacancy in the office of trustee has not been
filled and no alternative solution has been agreed upon by the shareholders,
then the holders of a majority of the Biggs stock or the holders of a majority
of the Wharton stock shall have the right to a liquidation of the Estate by a
receiver appointed by a court of competent jurisdiction. 


 Section 3 (entitled "Priority of Bylaws") of Article IV of the Bylaws reads: 


 Notwithstanding any provision of the Articles of Agreement and
Declaration of Trust, these bylaws are and shall be the controlling document
with respect to the rights and powers of the shareholders, the directors, and
the trustee and with respect to the relationships among them. To the extent
that the provisions of these bylaws are in conflict with, or are inconsistent
with, the provisions of the Articles, the provisions of these bylaws shall
control. 

Construction of Documents

 The logic behind Wharton's contention he is entitled to a distribution of assets in kind
begins with the idea that the language of the Bylaws alone controls the distribution to which
the shareholders are entitled on termination. Wharton's analysis gives little attention to the
Articles. Although the 1981 documents clearly state the parties' intention that the Bylaws
control in the event of conflict with the Articles, the documents do not indicate an intention
of the parties that the two documents conflict. The language of the documents, and
common sense, suggest instead that their provisions were intended to be consistent. The
Bylaws provide it is the "controlling" document, but provide also that both Articles and
Bylaws are governing instruments, and state the purposes of the Bylaws are to supplement
and provide means for coordination, not to amend or override the Articles. Accordingly,
unless required by the language of the Bylaws to find a conflict with applicable language
of the Articles, we will not do so but will construe them to be in harmony. See Southland
Royalty, 378 S.W.2d at 53. 

 As Wharton reads the Bylaws, paragraphs 1(d) and 1(e) (9) of Section 1 of Article IV
provide for different procedures for disposition of Estate assets following termination. By
his reading, under paragraph 1(d), the shareholder group giving notice of early termination
is entitled to a "distribution of the assets of the Estate," in kind, following liquidation. 
Paragraph 1(e), by contrast, requires the sale of assets and distribution of proceeds, after
satisfaction of any liabilities of the Estate. Wharton points to Article II, Section 1(d) of the
Bylaws, which contains both the phrases "sale of the assets of the Estate" and "liquidating
the assets of the Estate," as evidence the parties intended them to carry different
meanings. Citing dictionary definitions of the term "liquidate" and its usage in other
contexts, Wharton concludes that in the Estate documents the term means "to ascertain
the debts of the Estate and to pay them." He contends the process of liquidation, then,
under the Bylaws involves only the sale of such assets as necessary to pay debts of the
Estate. Since paragraph 1(e) provides for sale of all assets and distribution of proceeds,
he contends the two paragraphs simply are irreconcilable. Because it is undisputed he
gave notice for early termination effective March 31, 1991, Wharton asserts paragraph 1(d)
is the controlling provision and governs his entitlement. Paragraph 1(e), Wharton argues,
can have no application to the present proceeding because it speaks only of actions by a
trustee and the office of trustee is vacant. 

 We cannot agree with Wharton's construction of the Bylaw provisions. His reading
of these provisions does not harmonize them but unnecessarily brings them into conflict. 
In particular, we disagree with Wharton's contention the documents reflect an intention that
the shareholders are entitled to one form of distribution if the Estate terminates on
expiration of its term in 2003 and another if it terminates earlier. Article IV, Section 1 of the
Articles provides that on expiration of the Estate's term on March 31, 2003, or on earlier
termination, the trustee "shall proceed to wind up the affairs of the Trust and to liquidate its
assets and distribute the proceeds of same among the then existing Shareholders." The
Section goes on to provide that the trustee may on termination distribute in kind, "rather
than to liquidate," all or any part of the assets, but subject to shareholder approval. 
Whether termination occurs because of expiration of the 2003 term or because of earlier
termination, the procedure used and the shareholders' entitlement to distribution is the
same. 

 Wharton's reading of paragraph 1(d) to require the sale only of assets necessary to
pay debts, followed by distribution of assets in kind, thus construes it to conflict directly with
the Articles' requirement that Estate assets be liquidated and proceeds be distributed to
shareholders. We see nothing in the language of paragraph 1(d) to make such conflict
necessary. The phrase "liquidation and distribution of the assets of the Estate" can easily
be read simply as the expression in fewer words of the same procedure described in Article
IV, Section 1 of the Articles. (10) The procedure described in paragraph 1(d) by which the
shareholders, directors and trustee were to endeavor to resolve the problems that gave rise
to the notice of early termination and, if that effort failed, explore alternatives to liquidation
and distribution of assets might postpone the liquidation called for by the language of Article
IV, Section 1 of the Articles, but nothing in the language of paragraph 1(d) requires the
conclusion that the liquidation and distribution that would follow the failure of those efforts
is different from the liquidation and distribution described in the Articles. 

 Too, Wharton's reading would render meaningless the language, contained in Article
IV, Section 1 of the Articles as well as in paragraph 1(e), requiring shareholder approval
of distributions in kind. The right he asserts to receive at least a portion of his share of
assets in kind inevitably conflicts with the right of other shareholders to receive the benefit
of their shares of cash proceeds of all assets, and the Articles and Bylaws both express the
parties' intention that neither shareholder group will be deprived of that benefit without its
approval.

 We find Wharton's construction of paragraph 1(d) implausible for another reason. 
Wharton acknowledges that paragraph addresses only the events that are to follow the
delivery of notice of early termination. Noting the evidence is undisputed he gave notice
of early termination, he argues that paragraph provides him, following liquidation, a
contractual entitlement to a "distribution of the assets of the Estate." If, as Wharton argues,
the "distribution of the assets of the Estate" is a distribution in kind, we must then conclude
the parties intended a shareholder group giving notice of early termination would thereby
become entitled to a greater right, that of distribution in kind, than that to which paragraph
1(e) would have entitled them in the absence of early termination. Construing the
documents in a way to provide such an inducement to early termination is contrary to the
intention expressed in Article IV, Section 1(a) of the Bylaws, in which the Wharton and
Biggs shareholder groups each were provided the early termination option,
"[n]otwithstanding the intention and desire of the shareholders that the Estate continue in
existence for the full term [through March 31, 2003]."

 To the degree paragraph 1(e) addresses the shareholders' entitlement to distribution
following liquidation, we do not agree it is irreconcilable with paragraph 1(d). The
references to liquidation and distribution in paragraph 1(e) describe, in more detail, the
same procedure, resulting in the same shareholder entitlement, as that described in Article
VI, Section 1 of the Articles: (11) liquidation of Estate assets and distribution of proceeds to
the shareholders, subject to the possibility of distribution in kind with shareholder approval. 
We find no support in these documents for a contention that the shareholders' entitlements
on distribution of assets following termination are affected by the presence or absence of
a trustee. (12) 

 Article II, Section 1(d) of the Bylaws, which addresses procedures to be followed
when the trustee's position is vacant and no agreement can be reached on the appointment
of a successor, and to which paragraph 1(d) of Article IV of the Bylaws makes reference,
does, as Wharton notes, contain language referring both to sale of assets of the Estate and
liquidation of the assets. In the context of that Section, we agree with appellees that the
reference to sale of assets reasonably can be read to refer to sale of some but less than
all of the assets of the Estate. In any event, we do not find the language employed in that
Section to persuasively support Wharton's construction of the provisions directly addressing
distribution of assets on termination. 

Application of Texas Revised Partnership Act

 The trial court's order appointing the receiver states that the appointment is made
in accordance with the provisions of Article 6132b-8.03 of the Texas Revised Partnership
Act ("TRPA"), which authorizes the appointment of a person to carry out the winding up of
a partnership. Tex. Rev. Civ. Stat. Ann. art. 6132b-8.03 (Vernon Supp. 2004). The parties
make reference to the TRPA on appeal but Wharton does not contend the court's order
contravenes its provisions. Appellees cite TRPA Article 6132b-4.02, which states: "A
partner does not have a right to receive, and may not be required to accept, a distribution
in kind." Tex. Rev. Civ. Stat. Ann. art. 6132b-4.02 (Vernon Supp. 2004). Because we do
not construe the Articles and Bylaws to give Wharton the right to receive a distribution in
kind, we need not further consider the application of that provision. See Tex. Rev. Civ.
Stat. Ann. art. 6132b-1.03 (Vernon Supp. 2004) (TRPA governs to extent partnership
agreement does not otherwise provide). 

Equity in Appointment of Receiver

 Wharton also presents argument based on the precept that rules of equity govern
the appointment, powers and duties of a receiver. See Huston v. F.D.I.C., 800 S.W.2d 845,
849 (Tex. 1990). He asserts a court of equity has inherent authority to vary from the terms
of agreements, citing this court's opinion in Carroll, 464 S.W.2d 440, and argues the trial
court abused its discretion by ordering all assets of the Estate sold without hearing
evidence that their sale is the "proper and just remedy" to maximize the value of the Estate
for its shareholders.

 In Carroll, this court considered a trial court order approving a receiver's sale of farm
land that constituted substantially all the corpus of a trust estate created by a joint will that
expressly prohibited any sale of the trust property without consent of the trustee and
various specified beneficiaries. 464 S.W.2d at 442. Some of the beneficiaries opposed the
sale. This court affirmed the trial court's order, citing evidence that the land was subject
to an imminent foreclosure sale and that family dissension precluded any likelihood of
agreement among the beneficiaries, and finding that "the conditions disclosed by the
evidence" justified the trial court's exercise of its inherent equitable powers. Id. at 446. 

 Wharton also cites Kennedy v. Pearson, 109 S.W. 280 (Tex.Civ.App. 1908, writ
ref'd), on which Carroll relied. In Kennedy, the court found the facts alleged were not
sufficient to justify the trial court's exercise of equitable powers to approve a proposed sale
of land. The court in Kennedy stated, though, that a court of equity might order the sale if
a showing was made that the property was wasting and its sale was necessary to preserve
its value. 109 S.W. at 284, quoted in Carroll, 464 S.W.2d at 445. Wharton argues the
Carroll and Kennedy cases demonstrate a trial court is not free to exercise its powers in
equity without factual findings supported by evidence. We cannot agree that Carroll or
Kennedy suggest the trial court acted without supporting evidence. The important
distinction between those cases and this involving the Waggoner Estate can be found in
the terms of the governing instruments. As noted, in Carroll, the joint will prohibited sale
of the farm land without beneficiary approval, which was not obtained. 464 S.W.2d at 443. 
Similarly, in Kennedy, the will under which the trustees held the land was construed not to
authorize the trustees to sell it. 109 S.W. at 283. In those cases, the courts were asked
to approve, under their powers in equity, sales of land either not authorized or expressly
prohibited by the governing instruments. Here, the Waggoner Estate has terminated and
its governing documents require the liquidation described in Article IV, Section 1 of its
Articles and its Bylaws. A trial court abuses its discretion when it rules without supporting
evidence. Bocquet, 972 S.W.2d at 21. The trial court here had before it the Estate's
governing documents, and it did not abuse its discretion by directing the receiver to take,
under court supervision, the action expressly called for by the unambiguous terms of those
documents. 

 Nor did the court rule without supporting evidence concerning the conditions facing
the Estate. At the March 2004 hearing, the court also heard Wharton's testimony, which
included his descriptions of such topics as a proposal he made in March 2003 to the Biggs
shareholders to extend the term of the Estate; his unsuccessful efforts, following the entry
of the court's May 2003 order, to arrange for sale of all or part of the Estate's ranch
property; efforts made by the shareholders to divide the ranch and other assets; the
working relationship between its directors; his belief it would be possible to distribute the
Estate assets fairly and in kind without their sale; and his preference for such a division of
the assets. No one questions the trial court's finding that no agreement then existed
between Wharton and the Biggs shareholders to a partition or division in kind of any
particular asset of the Estate. 

 Moreover, the court's action has neither precluded agreement between the
shareholder groups for partition or division in kind of Estate assets nor deprived Wharton
of the opportunity to challenge the terms of any sale of Estate assets proposed by the
receiver. As noted, the order forbids consummation of the sale of any real or personal
property of the Estate without court approval after notice and hearing, and provides the
receiver is to sell all assets except to the extent the shareholders agree to partition or
division in kind of particular assets. 

 Finding the trial court did not abuse its discretion in the entry of its order appointing
a receiver, we overrule Wharton's sole issue and affirm the trial court's order.

 

 James T. Campbell

 Justice





1. This court referred to the Estate in a 1969 opinion as a "common law trust." Van
Hoose v. Moore, 441 S.W.2d 597, 600 (Tex.Civ.App.-Amarillo 1969, writ ref'd n.r.e.). See
Thompson v. Schmitt, 115 Tex. 53, 274 S.W. 554 (1925); Loomis Land & Cattle Co. v.
Diversified Mortgage Investors, 533 S.W.2d 420, 426 (Tex.Civ.App.-Tyler 1976, writ ref'd
n.r.e.) (Massachusetts trust treated under Texas law as partnership or joint stock
company).
2. See Tex. Prop. Code Ann. § 111.003 (Vernon 1995) (excluding business trusts from
operation of Texas Trust Code).
3. See Tex. Rev. Civ. Stat. Ann. art. 6132b-1.01, et seq. (Vernon Supp. 2004). Those
conclusions of the parties are not at issue here, and we accept them without examination. 
4. According to Wharton's brief, the Estate's assets include, among other assets,
some 520,000 contiguous acres primarily in Wilbarger County used for ranching and
mineral exploration and production, an office building, apartments, aircraft and facilities,
pipelines, feedlots and livestock.
5. The Bylaws provide for equal representation of the Wharton shares and the Biggs
shares on the board of directors. Since 1981, the board has consisted of two directors,
Wharton and a director representing the Biggs shares. Electra Waggoner Biggs served in
that capacity until April 1989, when she was succeeded as a director by Gene Willingham,
who has served since. 
6. After the death of Electra Waggoner Biggs, the Biggs shareholders consist of her
daughters Helen Biggs Willingham and Electra Biggs Moulder and the trustees of the trusts
created by her parents.
7. The May 14 order also reiterates the three holdings of the partial summary
judgment order and denies Wharton's motion to correct that order.
8. Wharton's expressed primary interest lies in retaining a share of the Estate's ranch
property.
9. Unless otherwise indicated, further references to "paragraph 1(d)" or "paragraph
1(e)" are to those paragraphs, as quoted above, of Section 1 of Article IV of the Estate's
Bylaws.
10. Indeed, Article IV, Section 1 of the Articles contains, in its next-to-last sentence,
practically the same phrase. 
11. Because we construe paragraphs 1(d) and 1(e) to provide the same entitlement
to distribution on termination of the Estate, we need not address Wharton's contention that
paragraph 1(d) governs the distribution now required. We note, though, that, even if we
agreed with Wharton's contention the shareholders are entitled to one form of distribution
under paragraph 1(e) if the Estate terminated on expiration of its term in 2003, and another
under paragraph 1(d) if it terminated earlier, it does not follow that paragraph 1(d)
necessarily governs. By the time of the trial court's May 2004 order, the Estate had
terminated by the expiration of its term on March 31, 2003, not simply because of
Wharton's 1989 notice of early termination. 
12. Wharton refers also to a provision of the Articles authorizing the board of directors
to conduct the business of the Estate while the trustee is temporarily disabled and during
a vacancy in the office of trustee, but denying the directors during such a temporary
disability or vacancy the power to sell real estate except in the ordinary course of business. 
He argues this provision demonstrates that only a trustee is authorized to sell all the assets
of the Estate. We cannot agree this provision sets any limit on the actions expressly
required by the Articles on termination of the Estate.