**LOOMIS LAND & CATTLE COMPANY et al., Appellants,**

v.

**DIVERSIFIED MORTGAGE INVESTORS, Appellee.**

No. 864.

Court of Civil Appeals of Texas, Tyler.

Jan. 29, 1976.

Rehearing Denied Feb. 26, 1976.

William Andress, Jr., Andress, Woodgate & Lodewick, Dallas, for appellants.

Peter A. Franklin, III, Stanley E. Neely, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellee.

MOORE, Justice.

This is an appeal from a summary judgment. The litigation commenced when appellant, Loomis Land and Cattle Company (Loomis Company), filed suit in the 162nd District Court of Dallas County to enjoin the sale of a shopping center by the substitute trustee, acting under the terms of a note and a deed of trust executed by Loomis Company and Richard F. Loomis as guarantor to appellee, Diversified Mortgage Investors (Diversified). The right to have the sale enjoined was based upon the grounds that (1) appellee, Diversified, being a Massachusetts trust was not a recognizable entity under the laws of this state and was therefore without standing in court to pursue any of the remedies arising under the contract, (2) that Diversified's appointment of a substitute trustee was invalid and (3) that the interest on the note was usurious. On Friday, December 28, 1973, the trial court granted Loomis Company's application for a temporary restraining order at approximately 2:30 p. m. and set the matter for hearing on January 4, 1974. Within about two hours after the restraining order was issued, the substitute trustee along with Diversified's attorney, together with the attorneys for Loomis Company, appeared before the court, at which time the attorneys for Diversified orally requested the court to either set an immediate hearing to dissolve the restraining order or to increase the amount of the bond and appoint a receiver. The trial court made no ruling but set a hearing on Diversified's request for 9:00 a. m., January 2, 1974. In the meantime, the attorneys for the parties engaged in negotiations and discussion regarding the appointment of a receiver. Diversified's attorney proposed that if Loomis Company would pay Diversified on January 2nd an amount equal to the January rentals, Diversified would postpone its motion for appointment of a receiver until about

January 25th. Having heard nothing from the proposal, counsel for Diversified appeared in court on January 2nd at about 8:35 a. m. and filed Diversified's original answer and motion for the appointment of a receiver. Thereafter, informal discussions took place between the trial judge and the attorneys for both parties regarding the appointment of a receiver; then at about 10:15 a. m. the District Clerk of the 162nd District Court delivered the trial judge a motion for a non-suit, together with an order granting Loomis Company a nonsuit which order had been signed by Judge Snodgrass of the 193rd District Court acting for the judge of the 162nd District. The motion for nonsuit was surreptitiously filed by Loomis Company's attorney at 6:23 a. m. on January 2nd and the order of nonsuit was entered by the judge of the 193rd District Court without notice to either Diversified's counsel or the judge of the 162nd District Court at 8:15 a. m. Subsequently, upon motion made by Diversified, the trial court set aside the order of nonsuit and appointed a receiver to collect the rents from the shopping center. On February 5, 1974, the temporary restraining order restraining the sale having expired, the substitute trustee proceeded to sell the shopping center at public auction for the sum of $2,250,000.00. Within approximately thirty minutes after the trustee's sale Loomis Company filed a trespass to try title suit seeking to establish title to the property on the ground that the trustee's sale was invalid. The suit was assigned to the 101st District Court of Dallas County. Thereafter, upon Diversified's motion to transfer and consolidate, the suit was transferred to the 162nd District Court and consolidated with the original suit, being numbered 73–9632–I. After the transfer and consolidation, Diversified proceeded to amend its pleading asserting a counterclaim for a deficiency judgment against Loomis Company. Diversified also filed a cross-claim seeking a deficiency judgment against Richard F. Loomis, individually, as guarantor of the note.

The cause came on for hearing before the trial court on Diversified's motion for summary judgment pursuant to Rule 166–A, Texas Rules of Civil Procedure. After a hearing the trial court rendered a summary judgment against Loomis Company and Richard F. Loomis, jointly and severally, for $214,093.52 representing the deficiency on the note, plus interest thereon at the rate of 15% per annum from February 5, 1974, together with all costs. Loomis Company and Richard F. Loomis, Jr., perfected this appeal. The parties will hereafter sometimes be referred to as "appellants" and "appellee."

Appellants seek a reversal by three points of error. For convenience, we will first consider appellants' third point contending that the trial court erred in granting Diversified's motion for summary judgment. In connection with this point, appellants assert six basic reasons why the summary judgment should be reversed.

■ First, they contend they were entitled to take a nonsuit as a matter of right. Based on this premise, they argue that the trial court had no authority to set aside the nonsuit. Consequently, they contend the trial court lost jurisdiction over the parties and the subject matter and therefore had no power to reinstate the original suit and likewise had no power to consolidate their subsequent action of trespass to try title into the original suit.

Rule 164, Texas Rules of Civil Procedure, grants a plaintiff a right to take a nonsuit, but such right is not without limitations. *Renfroe v. Johnson*, 142 Tex. 251, 177 S.W.2d 600 (1944). The question here is whether the filing of a motion for nonsuit and the entry of an order of dismissal by another court of concurrent jurisdiction without notice to opposing counsel or the trial judge of the court where the cause is pending, will defeat the adverse party's right to file an answer seeking affirmative relief. A similar situation was presented in the case of *Cape Oil Company v. Williams*, 427 S.W.2d 122 (Tex.Civ.App.—Tyler 1968,

no writ). In that case, this court held that the plaintiff's right to a nonsuit did not become absolute until after the motion was filed and brought to the attention of the court and opposing counsel. In the instant case, the undisputed proof shows that neither the appellant's motion for nonsuit nor the order of dismissal was brought to the attention of the trial judge until after appellee had filed its answer and claim for affirmative relief. Consequently, we hold that appellee's answer and claim for affirmative relief was timely filed and that the court retained jurisdiction over both the parties and the subject matter of the litigation. It follows that the trial court did not err in setting aside the nonsuit and reinstating the cause, nor did the court err in consolidating appellants' subsequent action in trespass to try title with the original suit pending in the 162nd District Court. *J. A. Walsh & Co. v. R. B. Butler, Inc.*, 260 S.W.2d 889 (Tex.Civ.App.—Waco 1953), writ dism'd, 152 Tex. 601, 262 S.W.2d 952 (1953).

■ Second, appellants contend that the court erred in granting a summary judgment because a fact question exists as to the amount of damages appellants sustained by the alleged wrongful appointment of a receiver. Appellants argue that the receiver was wrongfully appointed because the court failed to require and appellee failed to post an applicant's bond in connection with the appointment of a receiver. We overrule the contention. No appeal from the order was taken within the 20-day period required by Rule 385, Texas Rules of Civil Procedure, and as a result the order became final. The order having become final appellants are not permitted to collaterally attack the same on appeal. Any irregularity involved in the appointment, including the failure to post an applicant's bond, was waived. *King Land & Cattle Corp. v. Fikes*, 414 S.W.2d 521 (Tex.Civ. App.—Fort Worth 1967, writ ref'd n. r. e.); *Archer v. Ross*, 262 S.W.2d 213, 216 (Tex. Civ.App.—Fort Worth 1953, no writ).

Third, appellants contend that the trial court erred in granting appellee a summary judgment on their cross action in trespass to try title. In this connection appellants contend they had a right to title and possession of the premises in that the trustee's sale conducted by Franklin, the substitute trustee, was void because Diversified induced the original trustee, Layton, to resign without requesting him to sell the property. As we view the record the contention is without merit in that there is no summary judgment proof to support such contention. The proof shows that Diversified requested the original trustee, Layton, to sell the property but he refused on the ground that he was too busy with other matters. In his written resignation he stated that Diversified had "requested" him to "make the sale of the property" and that he declined to act as trustee and thereby resigned. The resignation was filed in the deed records of Dallas County. There is no evidence to the contrary. Since the summary judgment proof shows as a matter of law that appellee did not induce the original trustee to resign without requesting him to sell the property, the summary judgment proof establishes as a matter of law that there was no genuine issue of material fact upon appellants' theory of recovery in this regard.

Appellants further contend that the foreclosure sale by the substitute trustee, Franklin, was void because Franklin did not himself post the notices of sale. This contention is likewise without merit. The proof shows that the notices were properly posted by substitute trustee, Smith, who subsequently resigned due to an injury. It is now settled that a substitute trustee need not repost notices of sale when such notices have been therefore properly posted by a former trustee. *Tarrant Savings Association v. Lucky Homes, Inc.*, 390 S.W.2d 473, 475 (Tex.1965). Consequently, the summary judgment proof shows as a mat-

ter of law that there is no genuine issue of fact upon appellants' theory of recovery in this regard.

Moreover, we think the summary judgment must be affirmed on the additional ground that appellants failed, both before and after the foreclosure, to pay or tender the amount of the indebtedness due on the note. Under the facts and circumstances of this case such a tender was necessary. *Breitkreutz v. Cook*, 135 Tex. 574, 144 S.W.2d 534 (Tex.Comm.App.1940, opinion adopted); *Whalen v. Etheridge*, 428 S.W.2d 824 (Tex.Civ.App.—San Antonio 1968, writ ref'd n. r. e.) citing cases. The Commission of Appeals in *Jasper State Bank v. Braswell*, 130 Tex. 549, 111 S.W.2d 1079 (opinion adopted), 115 A.L.R. 329 (1938) said: "It is settled in this state that a mortgagee who has purchased the land at foreclosure sale, irregular or void as to the mortgagor (or as to one having title under the mortgagor), and who has taken possession under and in reliance upon such foreclosure and purchase, may retain possession against the suit of the mortgagor, or one holding under him, until his debt is paid." Under the facts and circumstances here, the summary judgment proof establishes as a matter of law that appellants were not entitled to recover title and possession upon their cross action in trespass to try title.

Fourth, appellants seek a reversal on the ground that a fact question existed as to whether the loan was usurious.[1] Appellants argue first that the true borrower was Richard F. Loomis, rather than Loomis Company. The only summary judgment proof in support of this contention is Richard F. Loomis' statement in his affidavit that:

"Diversified Mortgage Investors was unwilling to make this loan to Loomis Land and Cattle Co., Inc., without my personal guaranty and would not make it

---

1. The note and loan agreement provided that the contracted rate of interest was fixed at 4½% in excess of the prime rate of the Chemical Bank of New York, New York, but never to be less than 10% per annum nor more than 12% per annum.

to me except through Loomis Land and Cattle Co., Inc., because of my personal financial responsibility and the fact that if the loan was made directly to me they could not charge me more than 10% per annum interest, at which amount they were unwilling to make the loan."

As we view the record, the loan was made to Loomis Company rather than to Richard Loomis in his individual capacity. In his deposition, Loomis testified (1) that Loomis Company was not a sham corporation, (2) that the company had been doing business for almost 2 years before the application for the loan was made, (3) that the company had a net worth of several million dollars, and (4) that the company borrowed the funds from Diversified in order to continue to operate and expand the operation of the shopping center owned by it. Further, that the loan documents were signed as a corporation by Braxton Freeman as agent for Loomis as President of Loomis Company. While the corporate entity may in some instances be disregarded where it is utilized as a cloak for fraud or illegality, such is not the situation here. There is no summary judgment proof suggesting fraud or illegality. The mere fact that Diversified refused to make the loan to Loomis Company unless Richard F. Loomis, Jr., agreed to act as guarantor does not render the loan transaction void or illegal. *Skeen v. Glenn Justice Mortgage Company, Inc.*, 526 S.W.2d 252, 256 (Tex.Civ.App.—Dallas 1975, no writ). As we view the record the loan was made to Loomis Company and not to Richard F. Loomis, individually.

■ Appellants argue that in any event the loan is usurious as to Richard F. Loomis as guarantor because the rate of interest exceeds 10% per annum. They contend that the maximum rate of interest which Loomis individually can be charged is governed by Article 5069–1.02, Tex.Rev.Civ. Stat.Ann., which provides: "Except as otherwise fixed by law, the maximum rate of interest shall be ten percent per annum. A greater rate of interest than ten percent

per annum unless otherwise authorized by law shall be deemed usurious." Appellants' reliance on article 5069–1.02 is misplaced. Clearly the loan transaction in this case is governed by Article 1302–2.09, Tex.Rev.Civ. Stat.Ann., which provides as follows:

"Authority of certain corporations to borrow money.

Notwithstanding any other provision of law, corporations, domestic or foreign, may agree to and stipulate for any rate of interest as such corporation may determine, not to exceed one and one-half percent (1½%) per month on any bond, note, debt, contract or other obligation of such corporation under which the original principal amount is Five Thousand Dollars ($5,000) or more, . . . *and in such instances, the claim or defense of usury by such corporation, its successors, guarantors, assigns or anyone on its behalf is prohibited . . .*" (Emphasis added.)

The statute provides, in effect, that neither the corporate borrower nor a guarantor may assert the defense of usury upon the class of loans contemplated by the statute. The record conclusively shows that the interest rate agreed upon fell within that allowed by the statute. Thus, appellant Loomis is prohibited from asserting the defense of usury since he signed the corporate loan as a guarantor, rather than as an individual maker.

Appellant, Richard F. Loomis, Jr., further contends that the language in Article 1302–2.09 denying the defense of usury to guarantors of corporate loans is unconstitutional because individual guarantors are not specifically referred to in caption of the statute as required by Article III, sec. 35 of the Texas Constitution. He argues that the caption fails to show that the statute was intended as an amendment to the Texas usury statutes authorizing individuals to be charged interest in excess of 10% per annum. We do not agree.

The title of the Act reads as follows:

"An Act amending the Texas Miscellaneous Corporation Laws Act, enacted by Section 1, Chapter 205, Acts of the 57th Legislature, Regular Session, 1961, by adding a new Article 2.09, relating to the authority of certain corporations to borrow money and setting maximum interest rates thereon; prohibiting the plea or defense of usury in certain instances; providing exemptions; and declaring an emergency."

■ Neither the statute nor its caption has anything to do with the rate of interest that may be charged an individual borrower. The statute merely prohibits the defense of usury to the corporate borrower and its guarantors. The caption clearly states that the statute prohibits the defense of usury in certain instances. The caption of an act is to be liberally construed in favor of constitutionality. *Robinson v. Hill*, 507 S.W.2d 521, 525 (Tex.1974). In our view, the caption of the statute is not defective. It follows that appellant Richard F. Loomis, as guarantor, was not entitled to assert the defense of usury.

■ Fifth, appellants contend that a fact question existed upon the amount of the deficiency due and owing appellee at the time of the foreclosure. We fail to find any merit in this contention.

Appellee, Diversified, presented the affidavit of Donald Sutton, the custodian of its financial records. The affidavit contains a detailed account of the method by which he calculated the deficiency and interest due in the amount of $214,093.52. The testimony and calculations set by Sutton are clear, direct and positive; there being no circumstances in the evidence tending to discredit or impeach such testimony and calculations, we are permitted to consider them. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Appellants offered no summary judgment proof to the contrary. Upon a close study of Sutton's affidavit we are convinced that Diversified met its burden of showing conclusively the amount of the deficiency due and owing it.

■ Sixth, appellants would urge that the summary judgment was improperly granted because Diversified, being a Massachusetts Trust, has no standing to sue in Texas courts. While Massachusetts Business Trusts are not recognized in this state it has been held that they are to be treated as a partnership or an unincorporated joint stock company. *Thompson v. Schmitt*, 115 Tex. 53, 274 S.W. 554 (1925); *Means v. Limpia Royalties*, 88 S.W.2d 1080 (Tex.Civ. App.—El Paso 1935, writ dism'd). Being a joint stock company, Diversified is entitled to the benefits of Article 6133, Tex.Rev.Civ. Stat.Ann., providing that:

"Any unincorporated joint stock company or association, whether foreign or domestic, doing business in this State, may sue or be sued in any court of this State having jurisdiction of the subject matter in its company or distinguishing name; . . ."

Appellants assert by their First point "The trial court erred in instructing the Clerk to back-date to 28 December 1973, the filing of the Diversified answer and motion for appointment of a receiver, from its actual reduction to writing and physical filing on 2 January 1974." An examination of the record indicates that although the trial judge made some comment with reference to back-dating the instruments, the judge never instructed the clerk to do so. The record shows that the instruments referred to were actually filed on January 2, 1974. Appellants' contention is without foundation and the point is therefore overruled.

■ By their Second point of error, appellants complain of the action of the trial court in refusing to require Diversified to answer Loomis Company's Interrogatory No. 1 requesting the names, post office addresses and names and addresses of agents for service located in Texas, of every member or owner of any beneficial interest in Diversified Mortgage Investors. We find no error in the trial court's ruling.

Appellants admit in their brief that their only purpose in seeking such information was to name each of the shareholders of Diversified as party defendants. In the loan agreement, however, appellants specifically agreed that they would look only to the property of Diversified for any claims against Diversified and that the individual shareholders would not be liable. Such clauses exempting the individual shareholders are valid and not against public policy. *Shelton v. Mantoya Oil & Gas Co.*, 292 S.W. 165, 167 (Tex.Comm.App.1927, jdgmt. adopted). The point is overruled.

The judgment of the trial court is affirmed.