NO. 07-04-0308-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MARCH 7, 2005

_____

IN RE THE W. T. WAGGONER ESTATE
_____

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NO. 19,626; HONORABLE TOM NEELY, JUDGE
_____

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

**OPINION**

This is an interlocutory appeal of an order appointing a receiver for the W. T. Waggoner Estate and giving the receiver "the duty, responsibility and power," subject to the court's supervision and direction and subject to other provisions of the order, to "sell all assets" of the Estate. We will affirm the trial court's order.

**Background**

The W. T. Waggoner Estate is an entity formed by Articles of Agreement and Declaration of Trust (hereinafter, the "Articles") dated March 31, 1923, among W. T. Waggoner and members of his family. The Estate sometimes has been referred to in this

litigation as a business or Massachusetts trust.[1]  Originally, and at other times, the Estate has had a trustee.  It also has shareholders and directors.  It apparently is treated for federal tax purposes as a corporation.  The parties agree the Texas Trust Code does not apply to the Estate,[2] and for purposes of this appeal under Texas law it is to be treated as a partnership subject to the Texas Revised Partnership Act.[3]

The Estate was created for an original term of twenty years but its term was extended by subsequent amendments to the 1923 Articles.  By a 1948 amendment, the Estate's existence was extended through March 31, 1983.  By 1981, half the outstanding shares of the Estate were owned by A. B. Wharton, III (the "Wharton shares"), and half by Electra Waggoner Biggs and the trustees of trusts created by her parents E. Paul Waggoner and Helen Buck Waggoner (the "Biggs shares").  On April 1 of that year, the Articles were further amended and Bylaws for the Estate were adopted.  The amended Articles extended the term of the Estate through March 31, 2003, subject to prior termination by any shareholder "pursuant to agreement of the Shareholders."  The Bylaws spelled out that "[n]otwithstanding the intention and desire of the shareholders that the

---

[1]This court referred to the Estate in a 1969 opinion as a "common law trust."  *Van Hoose v. Moore*, 441 S.W.2d 597, 600 (Tex.Civ.App.–Amarillo 1969, writ ref'd n.r.e.).  *See Thompson v. Schmitt*, 115 Tex. 53, 274 S.W. 554 (1925); *Loomis Land & Cattle Co. v. Diversified Mortgage Investors*, 533 S.W.2d 420, 426 (Tex.Civ.App.–Tyler 1976, writ ref'd n.r.e.) (Massachusetts trust treated under Texas law as partnership or joint stock company).

[2]*See* Tex. Prop. Code Ann. § 111.003 (Vernon 1995) (excluding business trusts from operation of Texas Trust Code).

[3]*See* Tex. Rev. Civ. Stat. Ann. art. 6132b-1.01, *et seq*. (Vernon Supp. 2004).  Those conclusions of the parties are not at issue here, and we accept them without examination.

Estate continue in existence for the full term" [through March 31, 2003], either the holders of a majority of the Wharton shares or the holders of a majority of the Biggs shares had the "absolute right, with or without cause," to terminate the Estate as of any one of three dates, on written notice of intention to terminate.

In February 1989, Wharton gave written notice of his intention to terminate the Estate, selecting March 31, 1991, as the termination date. Charles M. Prather, who had served as the Estate's trustee since April 1, 1981, resigned as trustee in April 1989. The office of trustee has been vacant since Prather's resignation. On March 13, 1991, the Biggs shareholders filed suit seeking the appointment of a receiver for the Estate. By agreement, the termination date of the Estate was extended to a date later in 1991, but the parties made no express agreement for its extension beyond that date. The Estate nonetheless has continued to operate its properties,[4] under the supervision of its directors.[5]

The trial court entered an agreed scheduling order in September 1992 that abated the case for 120 days, requiring the parties to explore an agreed resolution of the matters in dispute, and set the case for trial a year later. A 1997 agreed order noted that the case had been continued on the court's docket without a specific resetting so the parties could

_____

[4]According to Wharton's brief, the Estate's assets include, among other assets, some 520,000 contiguous acres primarily in Wilbarger County used for ranching and mineral exploration and production, an office building, apartments, aircraft and facilities, pipelines, feedlots and livestock.

[5]The Bylaws provide for equal representation of the Wharton shares and the Biggs shares on the board of directors. Since 1981, the board has consisted of two directors, Wharton and a director representing the Biggs shares. Electra Waggoner Biggs served in that capacity until April 1989, when she was succeeded as a director by Gene Willingham, who has served since.

pursue settlement, and provided either party could request a trial setting at any time if settlement prospects no longer justified further postponement.

Electra Waggoner Biggs died in April 2001. In January 2003, the Biggs shareholders[6] filed a third amended petition for appointment of a receiver, and followed that in March 2003 with a motion for partial summary judgment. That motion stated Wharton "has sometimes contended in this litigation that the assets of the W. T. Waggoner Estate should be divided in kind or partitioned between the parties." The motion asserted undisputed evidence established that the governing documents require liquidation of the assets of the Estate and distribution of the proceeds in the absence of agreement of the shareholders to a division in kind of particular assets. The evidence submitted by the Biggs included the 1923 Articles, and amendments to that document including the 1981 amendments, and the 1981 Bylaws. The evidence also included a May 2002 deposition given by Wharton.

Wharton opposed the Biggs' motion. After an April 2003 hearing, the court signed an order of partial summary judgment dated May 8, 2003, decreeing that an event had occurred requiring the winding up of the Estate; that there then was no agreement among the shareholders for partition or division in kind of any particular assets of the Estate; and that except to the extent such an agreement was reached, all of the assets of the Estate

---

[6]After the death of Electra Waggoner Biggs, the Biggs shareholders consist of her daughters Helen Biggs Willingham and Electra Biggs Moulder and the trustees of the trusts created by her parents.

would be sold in liquidation and the proceeds distributed to the shareholders after satisfaction of obligations of the Estate.

In February 2004, the Biggs shareholders filed a motion for the appointment of John M. Greer as receiver. Wharton filed a response opposing Greer's appointment and filed a motion to "correct" the court's May 8, 2003, order of partial summary judgment. The motion to correct urged the court to delete the language requiring all Estate assets to be sold absent agreement among the shareholders.

The court conducted an evidentiary hearing on March 17, 2004, on the Biggs' motion for Greer's appointment as receiver and Wharton's motion to correct. Wharton testified at that hearing. By a March 29 letter, the court notified the parties of its decision not to appoint Greer as receiver. Noting that the parties had stated in open court that a receiver was necessary, the court stated in the letter its intention, subject to objection, to appoint Wilson D. Friberg as receiver. The court set a hearing for May 4 to hear objections to Friberg's appointment, and to hear further "argument and authorities" on Wharton's motion to correct. Neither side voiced objection to Friberg's appointment at the May 4 hearing, but the parties presented extensive argument concerning the powers that should be given him.

On May 14, the court signed the order made the subject of this appeal. It appointed Friberg as receiver. The order states that the receiver "shall have, subject to the Court's continued supervision and direction, the duty, responsibility and power, subject to [a later provision of the order], to sell all assets of the W. T. Waggoner Estate, except to the extent that the [shareholders] agree to a partition or division in kind of particular assets," and

states the appointment is made in accordance with Art. 6132b-8.03 of the Texas Revised Partnership Act.[7] The later provision of the order states that the receiver shall consummate no sale, irrespective of value, of any real or personal property of the Estate without the court's approval, after notice and hearing.

Notwithstanding the appointment of the receiver, the order directs that day-to-day operation of the Estate is to remain, subject to further order of the court, under the control and direction of the shareholders through the directors.

## Issue on Appeal

On appeal, Wharton challenges neither the necessity for a receiver nor the selection of Friberg to serve in that capacity. He acknowledges the parties agreed the appointment of a receiver was necessary because of their inability to reach any other agreed course for winding up the Estate. Wharton states his single issue as follows:

> The trial court erred in ordering a receiver for the W.T. Waggoner Estate to sell all of the assets of the Estate in liquidation when, as a matter of law, neither the Estate's governing documents nor the controlling law provide for or allow a sale of all of the assets.

The preliminary statement in his brief restates the relevant issue as "How should the assets of the W.T. Waggoner Estate be transferred to the Waggoner family when the Estate is wound up?" It succinctly states the parties' positions: "Appellees [the Biggs shareholders] suggest that the entire corpus of the Estate, including 520,000 acres of real property, be

---

[7]The May 14 order also reiterates the three holdings of the partial summary judgment order and denies Wharton's motion to correct that order.

sold and the cash proceeds distributed among the shareholder groups. Appellant Wharton insists he has a legal right, after the liabilities of the Estate are extinguished, to receive his share or, at a minimum, some portion of the Estate 'in kind' without a forced sale of all the Estate's assets."[8]

## Applicable Law

We review the court's order appointing a receiver under an abuse of discretion standard. *See Balias v. Balias, Inc.*, 748 S.W.2d 253, 256 (Tex.App.–Houston [14th Dist.] 1988, writ denied); *Carroll v. Carroll*, 464 S.W.2d 440, 447 (Tex.Civ.App.–Amarillo 1971, writ dism'd); *Strategic Minerals Corp. v. Dickson*, 320 S.W.2d 882, 884 (Tex.Civ.App.–Austin 1959, writ ref'd n.r.e.). A court may abuse its discretion by ruling arbitrarily, unreasonably or without reference to any guiding rules and principles, or without supporting evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Morrow v. H.E.B., Inc.* , 714 S.W.2d 297, 298 (Tex. 1986); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). When conducting an abuse of discretion review, we examine the entire record. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996); *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex. 1987).

The law applicable to construction of contracts has been applied to partnership agreements, *Park Cities Corp. v. Byrd*, 534 S.W.2d 668, 672 (Tex. 1976), and we will apply it here. Neither side contends the governing documents are ambiguous. We agree they

---

[8] Wharton's expressed primary interest lies in retaining a share of the Estate's ranch property.

are not ambiguous. The construction of an unambiguous contract is a matter of law for the court. *Edwards v. Lone Star Gas Co., a Div. of Enserch Corp.*, 782 S.W.2d 840, 841 (Tex. 1990); *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex.App.–Amarillo 2000, no pet.). When a court construes a written contract, its primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). In so doing, the court considers the entire writing, seeking to understand, harmonize and give effect to all its provisions so that none are rendered meaningless. *Id.* at 393; *Cross Timbers*, 22 S.W.3d at 26. *See Southland Royalty Co. v. Pan Am. Petroleum Corp.*, 378 S.W.2d 50, 53 (Tex. 1964). All the shareholders signed the amendments to the Articles dated April 1, 1981, and the Bylaws dated the same date. We will construe the amended Articles and the Bylaws together. *See Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981) (stating general rule that instruments executed at same time, for same purpose and in same transaction are read and construed together), cited in *Fort Worth Ind. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000).

## Document Provisions

*Articles*

We find several provisions of the amended Articles and the Bylaws pertinent to the issue presented. We begin with Article IV, Section 1 of the Articles, which states, in relevant part:

> Section 1. This Trust shall first continue for its original term of twenty years; and at the end of said period of time, the term of this Trust shall thereupon and then be extended and continued . . . for a term ending at

midnight on the 31st day of March, 2003, but subject to prior termination pursuant to agreement of the Shareholders. . . . Upon the expiration of the last mentioned period of time, or upon earlier termination, the Trustee shall proceed to wind up the affairs of the Trust and to liquidate its assets and distribute the proceeds of same among the then existing Shareholders. Notwithstanding the expiration of the term of the Trust or any voluntary dissolution of the Trust, the Trust shall continue in existence as an entity until completion of liquidation and distribution of its assets; and all of the powers herein granted to the Trustee and which may be necessary, convenient or useful in winding up the affairs of the trust, in liquidating and distributing its assets, or in carrying on the business operations of the Trust prior to final distribution, shall remain in full force and effect until the completion of such liquidation and distribution. Subject to the approval of the Shareholders, the Trustee may distribute to the Shareholders in kind, rather than to liquidate, all or any part of the assets of the Trust as they exist at the termination of the Trust or at any time thereafter; but in such event the Trustee shall be entitled to adequate indemnification against any unpaid or unsatisfied obligation, whether fixed or contingent, of the Trust Estate.

*Bylaws*

The preamble to the Bylaws adopted April 1, 1981, reads as follows:

Reference is made to the Articles of Agreement and Declaration of Trust of W. T. Waggoner Estate, as amended effective April 1, 1981. In particular, reference is made to the provisions of Section 5 of Article IV of said Articles as amended, which states that the Articles of Agreement and Declaration of Trust, together with the bylaws of the Estate, shall constitute the instruments governing the relationships between the trustee, the board of directors, and the shareholders.

These bylaws are adopted for the purposes of supplementing the provisions of the Articles and the providing means for the coordination of the activities of the trustee, the directors, and the shareholders. As among such parties, the provisions of these bylaws shall control over any inconsistent provisions in the Articles.

Relevant provisions of the Bylaws include those contained in Section 1 (entitled "Early Termination of the Estate; Control of Termination Procedures") of Article IV (entitled "Miscellaneous"), paragraphs 1(d) and 1(e) of which read as follows:

(d)   If a notice of intention to terminate is executed and delivered by either group of shareholders, then all shareholders, the directors, and the trustee shall endeavor to resolve the problems giving rise to such notice.  If the parties are unable to effect a resolution, the parties shall explore the available alternatives to a liquidation and distribution of the Estate assets, including such of the alternatives listed in paragraph (d) of Section 1 of Article II hereof as may be appropriate.  In the absence of a revocation of any such notice of intention to terminate, and in the absence of any agreement of the shareholders on an alternative to liquidation and distribution, the shareholder group giving such notice shall be entitled, after the date specified for termination, to a liquidation and distribution of the assets of the Estate.  The processes of liquidation and distribution may be commenced prior to such date by consent of the shareholders.

(e)   Upon termination or dissolution of the Estate, whether as a result of early termination under this Section 1 or at the expiration of the term stated in Section 1 of Article IV of the Articles, the trustee shall be subject to the control and direction of the board of directors in carrying out the processes of winding-up the affairs of the Estate, liquidating or dividing its assets, discharging its obligations, and distributing the remaining assets to the shareholders.  Except to the extent that the holders of a majority of the Wharton stock and the holders of a majority of the Biggs stock agree to a partition or division in kind of particular assets, all of the assets of the Estate shall be sold and the proceeds (after satisfaction of the liabilities and obligations of the Estate) distributed to the shareholders.

Paragraph (d) of Section 1 (entitled "Appointment and Tenure") of Article II (entitled "The Trustee") of the Bylaws reads in part as follows:

(d)     If the office of trustee becomes vacant for any reason and the directors are unable to agree on the election of a successor trustee . . . then the directors and the shareholders shall attempt to resolve the deadlock by consideration of all of the alternatives which may be available, including submission to arbitration, sale of stock among the shareholders, sale of stock

-10-

to a third party, merger, sale of the assets of the Estate, division in kind or other form of reorganization, appointment of a trustee or agent for the limited purpose of liquidating the assets of the Estate, and such other alternatives as may be proposed by any party. If, within a period of three months from the date the vacancy occurs, the vacancy in the office of trustee has not been filled and no alternative solution has been agreed upon by the shareholders, then the holders of a majority of the Biggs stock or the holders of a majority of the Wharton stock shall have the right to a liquidation of the Estate by a receiver appointed by a court of competent jurisdiction.

Section 3 (entitled "Priority of Bylaws") of Article IV of the Bylaws reads:

Notwithstanding any provision of the Articles of Agreement and Declaration of Trust, these bylaws are and shall be the controlling document with respect to the rights and powers of the shareholders, the directors, and the trustee and with respect to the relationships among them. To the extent that the provisions of these bylaws are in conflict with, or are inconsistent with, the provisions of the Articles, the provisions of these bylaws shall control.

## Construction of Documents

The logic behind Wharton's contention he is entitled to a distribution of assets in kind begins with the idea that the language of the Bylaws alone controls the distribution to which the shareholders are entitled on termination. Wharton's analysis gives little attention to the Articles. Although the 1981 documents clearly state the parties' intention that the Bylaws control in the event of conflict with the Articles, the documents do not indicate an intention of the parties that the two documents conflict. The language of the documents, and common sense, suggest instead that their provisions were intended to be consistent. The Bylaws provide it is the "controlling" document, but provide also that both Articles and Bylaws are governing instruments, and state the purposes of the Bylaws are to supplement and provide means for coordination, not to amend or override the Articles. Accordingly,

-11-

unless required by the language of the Bylaws to find a conflict with applicable language of the Articles, we will not do so but will construe them to be in harmony. *See Southland Royalty*, 378 S.W.2d at 53.

As Wharton reads the Bylaws, paragraphs 1(d) and 1(e)[9] of Section 1 of Article IV provide for different procedures for disposition of Estate assets following termination. By his reading, under paragraph 1(d), the shareholder group giving notice of early termination is entitled to a "distribution of the assets of the Estate," in kind, following liquidation. Paragraph 1(e), by contrast, requires the sale of assets and distribution of proceeds, after satisfaction of any liabilities of the Estate. Wharton points to Article II, Section 1(d) of the Bylaws, which contains both the phrases "sale of the assets of the Estate" and "liquidating the assets of the Estate," as evidence the parties intended them to carry different meanings. Citing dictionary definitions of the term "liquidate" and its usage in other contexts, Wharton concludes that in the Estate documents the term means "to ascertain the debts of the Estate and to pay them." He contends the process of liquidation, then, under the Bylaws involves only the sale of such assets as necessary to pay debts of the Estate. Since paragraph 1(e) provides for sale of all assets and distribution of proceeds, he contends the two paragraphs simply are irreconcilable. Because it is undisputed he gave notice for early termination effective March 31, 1991, Wharton asserts paragraph 1(d) is the controlling provision and governs his entitlement. Paragraph 1(e), Wharton argues,

---

[9] Unless otherwise indicated, further references to "paragraph 1(d)" or "paragraph 1(e)" are to those paragraphs, as quoted above, of Section 1 of Article IV of the Estate's Bylaws.

can have no application to the present proceeding because it speaks only of actions by a trustee and the office of trustee is vacant.

We cannot agree with Wharton's construction of the Bylaw provisions. His reading of these provisions does not harmonize them but unnecessarily brings them into conflict. In particular, we disagree with Wharton's contention the documents reflect an intention that the shareholders are entitled to one form of distribution if the Estate terminates on expiration of its term in 2003 and another if it terminates earlier. Article IV, Section 1 of the Articles provides that on expiration of the Estate's term on March 31, 2003, or on earlier termination, the trustee "shall proceed to wind up the affairs of the Trust and to liquidate its assets and distribute the proceeds of same among the then existing Shareholders." The Section goes on to provide that the trustee may on termination distribute in kind, "rather than to liquidate," all or any part of the assets, but subject to shareholder approval. Whether termination occurs because of expiration of the 2003 term or because of earlier termination, the procedure used and the shareholders' entitlement to distribution is the same.

Wharton's reading of paragraph 1(d) to require the sale only of assets necessary to pay debts, followed by distribution of assets in kind, thus construes it to conflict directly with the Articles' requirement that Estate assets be liquidated and proceeds be distributed to shareholders. We see nothing in the language of paragraph 1(d) to make such conflict necessary. The phrase "liquidation and distribution of the assets of the Estate" can easily be read simply as the expression in fewer words of the same procedure described in Article

-13-

IV, Section 1 of the Articles.[10] The procedure described in paragraph 1(d) by which the shareholders, directors and trustee were to endeavor to resolve the problems that gave rise to the notice of early termination and, if that effort failed, explore alternatives to liquidation and distribution of assets might postpone the liquidation called for by the language of Article IV, Section 1 of the Articles, but nothing in the language of paragraph 1(d) requires the conclusion that the liquidation and distribution that would follow the failure of those efforts is different from the liquidation and distribution described in the Articles.

Too, Wharton's reading would render meaningless the language, contained in Article IV, Section 1 of the Articles as well as in paragraph 1(e), requiring shareholder approval of distributions in kind. The right he asserts to receive at least a portion of his share of assets in kind inevitably conflicts with the right of other shareholders to receive the benefit of their shares of cash proceeds of all assets, and the Articles and Bylaws both express the parties' intention that neither shareholder group will be deprived of that benefit without its approval.

We find Wharton's construction of paragraph 1(d) implausible for another reason. Wharton acknowledges that paragraph addresses only the events that are to follow the delivery of notice of early termination. Noting the evidence is undisputed he gave notice of early termination, he argues that paragraph provides him, following liquidation, a contractual entitlement to a "distribution of the assets of the Estate." If, as Wharton argues, the "distribution of the assets of the Estate" is a distribution in kind, we must then conclude

_____

[10] Indeed, Article IV, Section 1 of the Articles contains, in its next-to-last sentence, practically the same phrase.

-14-

the parties intended a shareholder group giving notice of early termination would thereby become entitled to a greater right, that of distribution in kind, than that to which paragraph 1(e) would have entitled them in the absence of early termination. Construing the documents in a way to provide such an inducement to early termination is contrary to the intention expressed in Article IV, Section 1(a) of the Bylaws, in which the Wharton and Biggs shareholder groups each were provided the early termination option, "[n]otwithstanding the intention and desire of the shareholders that the Estate continue in existence for the full term [through March 31, 2003]."

To the degree paragraph 1(e) addresses the shareholders' entitlement to distribution following liquidation, we do not agree it is irreconcilable with paragraph 1(d). The references to liquidation and distribution in paragraph 1(e) describe, in more detail, the same procedure, resulting in the same shareholder entitlement, as that described in Article VI, Section 1 of the Articles:[11] liquidation of Estate assets and distribution of proceeds to the shareholders, subject to the possibility of distribution in kind with shareholder approval. We find no support in these documents for a contention that the shareholders' entitlements

---

[11]Because we construe paragraphs 1(d) and 1(e) to provide the same entitlement to distribution on termination of the Estate, we need not address Wharton's contention that paragraph 1(d) governs the distribution now required. We note, though, that, even if we agreed with Wharton's contention the shareholders are entitled to one form of distribution under paragraph 1(e) if the Estate terminated on expiration of its term in 2003, and another under paragraph 1(d) if it terminated earlier, it does not follow that paragraph 1(d) necessarily governs. By the time of the trial court's May 2004 order, the Estate had terminated by the expiration of its term on March 31, 2003, not simply because of Wharton's 1989 notice of early termination.

on distribution of assets following termination are affected by the presence or absence of a trustee.[12]

Article II, Section 1(d) of the Bylaws, which addresses procedures to be followed when the trustee's position is vacant and no agreement can be reached on the appointment of a successor, and to which paragraph 1(d) of Article IV of the Bylaws makes reference, does, as Wharton notes, contain language referring both to sale of assets of the Estate and liquidation of the assets. In the context of that Section, we agree with appellees that the reference to sale of assets reasonably can be read to refer to sale of some but less than all of the assets of the Estate. In any event, we do not find the language employed in that Section to persuasively support Wharton's construction of the provisions directly addressing distribution of assets on termination.

## Application of Texas Revised Partnership Act

The trial court's order appointing the receiver states that the appointment is made in accordance with the provisions of Article 6132b-8.03 of the Texas Revised Partnership Act ("TRPA"), which authorizes the appointment of a person to carry out the winding up of a partnership. Tex. Rev. Civ. Stat. Ann. art. 6132b-8.03 (Vernon Supp. 2004). The parties make reference to the TRPA on appeal but Wharton does not contend the court's order

---

[12] Wharton refers also to a provision of the Articles authorizing the board of directors to conduct the business of the Estate while the trustee is temporarily disabled and during a vacancy in the office of trustee, but denying the directors during such a temporary disability or vacancy the power to sell real estate except in the ordinary course of business. He argues this provision demonstrates that only a trustee is authorized to sell all the assets of the Estate. We cannot agree this provision sets any limit on the actions expressly required by the Articles on termination of the Estate.

-16-

contravenes its provisions. Appellees cite TRPA Article 6132b-4.02, which states: "A partner does not have a right to receive, and may not be required to accept, a distribution in kind." Tex. Rev. Civ. Stat. Ann. art. 6132b-4.02 (Vernon Supp. 2004). Because we do not construe the Articles and Bylaws to give Wharton the right to receive a distribution in kind, we need not further consider the application of that provision. *See* Tex. Rev. Civ. Stat. Ann. art. 6132b-1.03 (Vernon Supp. 2004) (TRPA governs to extent partnership agreement does not otherwise provide).

## Equity in Appointment of Receiver

Wharton also presents argument based on the precept that rules of equity govern the appointment, powers and duties of a receiver. *See Huston v. F.D.I.C.*, 800 S.W.2d 845, 849 (Tex. 1990). He asserts a court of equity has inherent authority to vary from the terms of agreements, citing this court's opinion in *Carroll*, 464 S.W.2d 440, and argues the trial court abused its discretion by ordering all assets of the Estate sold without hearing evidence that their sale is the "proper and just remedy" to maximize the value of the Estate for its shareholders.

In *Carroll*, this court considered a trial court order approving a receiver's sale of farm land that constituted substantially all the corpus of a trust estate created by a joint will that expressly prohibited any sale of the trust property without consent of the trustee and various specified beneficiaries. 464 S.W.2d at 442. Some of the beneficiaries opposed the sale. This court affirmed the trial court's order, citing evidence that the land was subject to an imminent foreclosure sale and that family dissension precluded any likelihood of

agreement among the beneficiaries, and finding that "the conditions disclosed by the evidence" justified the trial court's exercise of its inherent equitable powers. *Id.* at 446.

Wharton also cites *Kennedy v. Pearson*, 109 S.W. 280 (Tex.Civ.App. 1908, writ ref'd), on which *Carroll* relied. In *Kennedy*, the court found the facts alleged were not sufficient to justify the trial court's exercise of equitable powers to approve a proposed sale of land. The court in *Kennedy* stated, though, that a court of equity might order the sale if a showing was made that the property was wasting and its sale was necessary to preserve its value. 109 S.W. at 284, quoted in *Carroll*, 464 S.W.2d at 445. Wharton argues the *Carroll* and *Kennedy* cases demonstrate a trial court is not free to exercise its powers in equity without factual findings supported by evidence. We cannot agree that *Carroll* or *Kennedy* suggest the trial court acted without supporting evidence. The important distinction between those cases and this involving the Waggoner Estate can be found in the terms of the governing instruments. As noted, in *Carroll*, the joint will prohibited sale of the farm land without beneficiary approval, which was not obtained. 464 S.W.2d at 443. Similarly, in *Kennedy*, the will under which the trustees held the land was construed not to authorize the trustees to sell it. 109 S.W. at 283. In those cases, the courts were asked to approve, under their powers in equity, sales of land either not authorized or expressly prohibited by the governing instruments. Here, the Waggoner Estate has terminated and its governing documents require the liquidation described in Article IV, Section 1 of its Articles and its Bylaws. A trial court abuses its discretion when it rules without supporting evidence. *Bocquet*, 972 S.W.2d at 21. The trial court here had before it the Estate's governing documents, and it did not abuse its discretion by directing the receiver to take,

under court supervision, the action expressly called for by the unambiguous terms of those documents.

Nor did the court rule without supporting evidence concerning the conditions facing the Estate. At the March 2004 hearing, the court also heard Wharton's testimony, which included his descriptions of such topics as a proposal he made in March 2003 to the Biggs shareholders to extend the term of the Estate; his unsuccessful efforts, following the entry of the court's May 2003 order, to arrange for sale of all or part of the Estate's ranch property; efforts made by the shareholders to divide the ranch and other assets; the working relationship between its directors; his belief it would be possible to distribute the Estate assets fairly and in kind without their sale; and his preference for such a division of the assets. No one questions the trial court's finding that no agreement then existed between Wharton and the Biggs shareholders to a partition or division in kind of any particular asset of the Estate.

Moreover, the court's action has neither precluded agreement between the shareholder groups for partition or division in kind of Estate assets nor deprived Wharton of the opportunity to challenge the terms of any sale of Estate assets proposed by the receiver. As noted, the order forbids consummation of the sale of any real or personal property of the Estate without court approval after notice and hearing, and provides the receiver is to sell all assets except to the extent the shareholders agree to partition or division in kind of particular assets.

Finding the trial court did not abuse its discretion in the entry of its order appointing a receiver, we overrule Wharton's sole issue and affirm the trial court's order.


James T. Campbell
Justice