# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00059-CV

**Hamid Pouya, Appellant**

**v.**

**Zapa Interests, Inc.; Samuel f/k/a Saeed Afsahi; Kaveh Sardashti; and
Parviz Zavareh, Appellees**

## FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT
## NO. 25,591, HONORABLE REVA TOWSLEE CORBETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

On May 7, 2006, the district court granted appellant Hamid Pouya's motion to appoint a rehabilitating receivership for appellee Zapa Interests, Inc. *See* Tex. Bus. Corp. Act Ann. art. 7.05(A) (West 2003). Eight months later, on January 10, 2007, the same court denied Pouya's motion to terminate the receivership. *See id.* art. 7.05(B). Pouya now appeals the order,[1] arguing that the district court erred in refusing to terminate the receivership. We will affirm the district court's order.

---

[1] An order denying the termination of a receivership is appealable as a final judgment. *Christie v. Lowrey*, 589 S.W.2d 870, 874 (Tex. Civ. App.—Dallas 1979, no writ), *cited in Akin, Gump, Strauss, Hauer and Feld, L.L.P. v. E-Court, Inc.*, No. 03-02-00714-CV, 2003 Tex. App. LEXIS 3966, at *7 (Tex. App.—Austin May 8, 2003, no pet.) (mem. op.).

# BACKGROUND

Zapa Interests, Inc. was incorporated in 1985. Although it is a Texas corporation with a registered office in Bastrop County, it has done most of its business outside the state, with its current principal place of business in the State of California. Pouya and appellees Samuel Afsahi, Kaveh Sardashti, and Parviz Zavareh are the shareholders and directors of Zapa, with Pouya, Afsahi, and Zavareh each holding 30% of the voting power and Sardashti holding the remaining 10%. Pouya, Zavareh, and Afsahi are also corporate officers. Zavareh had served as president of the corporation from its beginning but resigned in 2004; Pouya succeeded him.

Zapa was in the business of buying real estate, improving it, and reselling it. Profits in this venture were rather small until 2005, when the sale of a particular property netted Zapa $1.3 million. After the sale, Zapa became embroiled in litigation in California, with the shareholders suing each other and the corporation to determine the percentage of any distribution of the profits. Meanwhile, the voting between the four directors divided into two camps, with Pouya and Zavareh on one side and Afsahi and Sardashti on the other. As neither side had a majority of three, no major decisions concerning the corporation could be made.

Zapa's bylaws call for a five-person board of directors. With one of the director positions having never been filled, Pouya and Zavareh could have broken this deadlock in the board by voting their combined 60% interest and either replacing Afsahi and Sardashti on the board or electing another board member to break the tie. They were prevented from doing so, however, because Zavareh's wife had sued for divorce, and one of the temporary orders of the California divorce court prohibited Zavareh from voting his 30% interest in Zapa without his ex-wife's

2

approval.[2] Zavareh and his ex-wife were unable to agree on any matter regarding the voting of the shares. Zavareh's inability to vote his 30% interest gave Afsahi and Sardashti the operating majority and the power to elect a fifth director or vote out the other directors and thus control the board. At the same time, however, the effective absence of 30% of the shares made it more difficult to have a quorum present at each shareholder meeting. Article 2, section 4 of Zapa's bylaws states that a majority of the shares entitled to vote must be represented in order to establish a quorum at each shareholder meeting. The remaining shareholders were unable to establish a quorum at any shareholder meetings because Pouya refused to attend shareholder meetings at which an "adversary of the corporation," Zavareh's ex-wife, was present. Without a quorum, the shareholders could not break the deadlock by changing the membership of the board of directors.

Pouya, in his capacity as a shareholder, petitioned the 335th District Court of Bastrop County to appoint a rehabilitating receiver for Zapa.[3] Both his verified petition and the evidence that he presented at the hearing alleged that the corporation's directors were deadlocked, that the shareholders were unable to break this deadlock, and that no real estate could be sold without the approval of Zapa's board of directors. The inability of the corporation to dispose of its real estate was crucial in this case. One of the properties that Zapa owned was in need of a new tenant because the previous tenant, whose rent payments had contributed to covering the mortgage on the property,

---

[2] California law permits a divorce to be finalized before the property settlement has been completed. Because the Zavarehs' divorce was final during the relevant time period, we will refer to Marianne Zavareh as "Zavereh's ex-wife."

[3] Afsahi and Sardashti opposed the appointment of a Texas receiver and filed a request for the appointment of a California receiver shortly after Pouya's petition was filed. Thus, it appears that the parties did not dispute the concept of a receivership but disagreed on whether the receiver should be located in California or Texas.

had not renewed his lease. The resulting deficit was $1,000 per month, and the corporation would continue to lose this $1,000 monthly until one of the directors gave in, which was unlikely given the contentious California litigation, or until the shareholders could obtain a quorum, which would be difficult in light of Pouya's refusal to attend shareholder meetings if Zavareh's ex-wife was present.

At the hearing, Pouya, under questioning by both his attorney and the other parties, revealed additional reasons for petitioning for the receivership. When asked by Zapa's counsel what the basis for the receivership was, he replied, "Because of the deadlock of the directors and the shareholders. And the point of the receiver will actually handle the day to day business of the corporation [sic] until the corporation liquidates all the assets and everybody gets their share and goes away." An exchange between Pouya and counsel for Afsahi and Sardashti revealed some further reasons:

> Q. So if a receiver is appointed, then we should not expect that a receiver's full time will be devoted toward the administration of Zapa?
>
> A. Not necessarily, no.
>
> Q. What do you mean by that?
>
> A. Because there are other issues that needs [sic] to be handled within the corporation and it's not being handled at this point.
>
> Q. You'd agree that some of the other issues that a receiver might handle would be the proper distribution according to the percentages—shareholder percentages?
>
> A. Yes.

4

Another exchange between Pouya and counsel for Afsahi and Sardashti brought to the court's attention the existence of four legal actions in California, which Pouya also pointed to in support of his application for a Texas receiver, testifying that Texas "presents a very neutral place to have a receiver, to do the business of the corporation, to do away with the business of the corporation with neutrality rather than being in California between all these lawsuits."[4] When asked by his attorney whether he expected such opposition to the receivership, Pouya answered, "I didn't think there would be so much objection to filing the receivership. It's to be fair to everyone and to do away with the rest of the assets of the corporation, distributing them."

The district court appointed the rehabilitating receiver and issued a fourteen-page order on March 8, 2006. Besides authorizing the receiver to take over the business of the corporation and take possession of its assets, the order also directs the receiver "to prevent the inequitable distribution of assets and to determine, adjust, and protect persons with an interest in a claim to the shares of Zapa and/or the Receivership Assets of Zapa." The order empowers the receiver to serve as an arbiter of the shareholders' claims. It also directs the receiver not to make a distribution of corporate assets until the California litigation ends and orders the receiver to follow the judgments of the California courts when determining a distribution of assets. The order further empowers the receiver to liquidate the assets of the corporation and enjoins the shareholders from instituting any

---

[4] Pouya, as president of the corporation, transferred a majority of the corporation's assets, approximately $1.3 million in cash, to a Texas bank account shortly before the receivership hearing. In light of the facts that the corporation's primary liquid assets were located in Texas, the corporation's primary counsel was located in Texas, and the corporation was incorporated in Texas, it was certainly not unreasonable for a Texas court to appoint a receiver.

other actions against or on behalf of Zapa. All parties approved the form of the order appointing the receiver. None of the parties appealed the order.

A few months after the receiver was appointed, the California court finalized Zavareh's property settlement with his ex-wife and allowed him to vote his shares again. With the Pouya–Zavareh majority reestablished, on November 21, 2006, Pouya moved to terminate the receivership on the ground that the condition necessitating the appointment of the receiver—the inability of shareholders to remedy detrimental director deadlock—had been remedied, arguing that by law the court was required to terminate the receivership. The court denied this motion. None of the parties requested that the court file findings of fact or conclusions of law in support of its decision.

## DISCUSSION

Pouya's contention on appeal is that the district court erred by denying his motion to terminate the receivership. The appointment or termination of a receivership is within the sound discretion of the appointing court. *Gilles v. Yarbrough*, 224 S.W.2d 720, 722 (Tex. Civ. App.—Fort Worth 1949, no writ). We therefore review a refusal to terminate a receivership for an abuse of discretion. *In re Waggoner Estate*, 163 S.W.3d 161, 165 (Tex. App.—Amarillo 2005, no pet.) (citing *Strategic Minerals Corp. v. Dickson*, 320 S.W.2d 882, 884 (Tex. Civ. App.—Austin 1959, writ ref'd n.r.e.)).

Under an abuse-of-discretion standard, an appellate court cannot substitute its own judgment on factual matters for that of the trial court unless it is clear from the record that the trial court could only reach one decision. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). However,

6

"a trial court has no 'discretion' in determining what the law is or applying the law to the facts. Thus, a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Id.* at 840. A trial court also abuses its discretion if it judges without relying on guiding principles or evidence or judges arbitrarily or unreasonably. *Waggoner Estate*, 163 S.W.3d at 165 (citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998); *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 298 (Tex. 1986); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)).

Although the district court made oral comments concerning the reasons for denying Pouya's motion during the hearing,[5] we cannot use these comments as the basis for the court's decision because oral comments do not constitute findings of fact or conclusions of law. *Nesmith v. Berger*, 64 S.W.3d 110, 119 (Tex. App.—Austin 2001, pet. denied) (citing *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984)). Additionally, because the parties did not request and the court did not sua sponte file findings of fact, we must uphold the district court's order if any legal theory in support of the order is supported by the record. *Sharp v. Hobart Corp.*, 957 S.W.2d 650, 652 (Tex. App.—Austin 1997, no writ) (citing *W.E.R.*, 669 S.W.2d at 717).

Under the Business Corporations Act, a district court can appoint a receiver for the business and assets of a corporation if it is shown either (1) in a suit by a shareholder, that the shareholders cannot remedy a deadlock of directors resulting in irreparable injury to the corporation

---

[5] The district court stated on the record at the hearing, "I'm going to deny the request to terminate, due to the fact of pending contracts the receiver has." The court later said, "I do believe the original conflicts, or some of them . . . maybe the divorce issue is gone, but most of the other things that I think [Afsahi and Sardashti] alleged do seem to still be there, and as a result it is apparent the receivership is still necessary to continue on."

or, (2) in any suit, that a receiver could be appointed by a court of equity. Tex. Bus. Corp. Act. art. 7.05(A)(1)(e), (A)(3). Once the condition of the "corporation necessitating such an appointment of a receiver is remedied, the receivership shall be terminated forthwith." *Id.* art. 7.05(B). Thus, we must determine what the condition necessitating the appointment of the receiver was and whether that condition has been remedied.

The parties largely disagree as to the purpose of the receivership, as well as whether the condition necessitating the receivership has been remedied. Pouya argues that the court appointed the receiver to take care of the corporation until the shareholders are able to remedy the director deadlock. He urges that this condition has been remedied and that the trial court was required to terminate the receivership. Afsahi and Sardashti, on the other hand, argue that the conditions necessitating the receiver were either waste and mismanagement of the assets or were equitable in nature. They urge that the conditions have not been remedied and that the trial court was correct in refusing to terminate the receivership.

**Condition Necessitating Receivership**

We hold that the conditions for the receivership were equitable in nature because the language of the order appointing the receiver suggests that the purpose of the receiver was to protect the rights of the shareholders. The order includes provisions that go far beyond merely conducting the business of the corporation until deadlock can be broken. The receiver must not only sell off all remaining assets, but must also "prevent the inequitable distribution of assets" by determining the proper distribution of the corporation's assets among the shareholders and serving as an arbiter between the shareholders in their corporate disputes, following the results of the California litigation

8

in any such determinations.  The order also grants specific injunctions against the officers and shareholders, enjoining them from instituting any actions against or on behalf of Zapa during the receivership.  The language of the order exceeds a simple mandate to keep the corporation running until the shareholders can vote again.  Thus, the order appointing the receiver suggests that the receivership is an equitable receivership.

Pouya makes four arguments in opposition to the idea that the conditions necessitating the receivership were equitable in nature.  First, Pouya argues that neither party pleaded equitable issues at the first hearing and that none of the evidence presented at the first hearing supports the exercise of equitable powers.  However, Pouya is asking us to review the order under the wrong standard. When interpreting orders and judgments, courts look first to the language used and apply the same rules of construction that are used for other written instruments.  *Quanto Int'l Co. v. Lloyd*, 897 S.W.2d 482, 485–86 (Tex. App.—Houston [1st Dist.] 1995, orig. proceeding) (citing *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971)).  If the order is clear and unambiguous, then "the court must declare the effect of the order in light of the literal meaning of the language used." *Id.* at 486.  The order that the district court issued appointing the receiver is quite clear.  Its fourteen pages outline in detail the receiver's responsibilities and the responsibilities of each of the parties to the suit.  At the same time, there are no provisions in the order that indicate that the receivership was to continue only until the shareholders remedy the director deadlock.

Even if the order were ambiguous or unclear, we would still have to agree with the district court because the evidence presented at the first hearing supports an interpretation that the receiver was appointed for equitable purposes.  Although Pouya claims that in order to have an

9

equitable receivership, one must show malfeasance on the part of directors,[6] there are several other reasons for a court to invoke its powers of equity and appoint an equitable receivership. "It is certainly the rule in this state that equity will take cognizance of a controversy to determine the rights of all the parties, and grant the relief required to meet the ends of justice in order to prevent a multiplicity of suits." *Texas Unemployment Comp. Comm'n v. Metropolitan Bldg. & Loan Ass'n*, 139 S.W.2d 309, 311 (Tex. Civ. App.—Austin 1940, writ ref'd) (quoting *Rogers v. Daniel Oil & Royalty Co.*, 110 S.W.2d 891, 895 (Tex. 1937)). Because of the evidence of multiple contentious shareholder suits in California, it is quite conceivable that the district court could have appointed the receivership to prevent further shareholder litigation and determine the rights of the shareholders once and for all. This would have been sufficient to invoke the court's equitable jurisdiction, as the Texas judicial system "is essentially equitable in its nature, and was designed to prevent more than one suit growing out of the same subject-matter of litigation; and our decisions from the first have steadily fostered this policy." *Cravens v. Adams*, 94 S.W.2d 877, 883 (Tex. Civ. App.—Austin 1936, writ ref'd) (quoting *Galveston, Harrisburg, & San Antonio Ry. Co. v. Dowe*, 7 S.W. 368, 371 (Tex. 1888)).

In Pouya's second argument in opposition to the idea that the receivership was equitable, he asserts, correctly, that necessity for the receivership must be shown in order to have an equitable receivership, *see Whitson Co. v. Bluff Creek Oil Co.*, 256 S.W.2d 1012, 1015 (Tex. Civ. App.—Fort Worth 1953, writ dism'd w.o.j.), and argues that no such showing was made

---

[6] Pouya did not present, and we have not been able to find, any legal authority in support of this assertion.

at the hearing on his motion to appoint a receiver. However, Pouya's own testimony at that hearing supports a finding of necessity. It was Pouya who claimed that there were no other remedies at law or equity that could solve the corporation's dilemma except for the receivership. It was Pouya who testified that due to the contentious litigation in California, a receiver was necessary not only to take care of the business of the corporation but also to liquidate the corporate assets and to determine the proper distribution of those assets among the shareholders. As necessity for the receivership was clearly present, Pouya's assertion of the necessity requirement is not grounds for reversal.

Pouya's third argument is that even if the evidence could support the conclusion that the receivership was equitable in nature, the order could not be interpreted to create an equitable receivership because he pleaded for only a deadlock receivership. If issues not included in pleadings are tried by express or implied consent of the other party, however, those issues are to be treated as if they were pleaded, and failure to amend the pleadings to conform to issues tried by consent does not affect the result of the trial. *See* Tex. R. Civ. P. 67; *Merckling v. Curtis*, 911 S.W.2d 759, 771 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (citing *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991)). We have already discussed how both sides introduced—without objection—evidence going to equitable issues that were not raised in the pleadings. It would thus not have been unreasonable for the district court to have concluded that an equitable receivership was tried by consent.

Pouya's fourth argument opposing the conclusion that the conditions for the receivership are equitable in nature is that the receivership order does not correctly reflect the court's ruling and the inclusion of the powers and duties of the receiver relating to the liquidation and

11

distribution of assets was a mistake. However, because Pouya's counsel agreed to the form of the order and signed it without objection, Pouya may not now claim that the form of the order does not properly reflect the court's ruling. Furthermore, the issue of whether the form of the order is incorrect is not properly before us. In his motion to terminate the receivership and at the hearing on the motion, Pouya never alleged that the form of the prior order was incorrect or a mistake. Instead, he merely asked for the receiver's termination on the ground that the condition necessitating the receivership had been remedied. If Pouya took issue with the form of the order appointing the receiver, he should have requested the trial court to modify the order and, if the court refused, appealed the order after requesting findings of fact. *See* Tex R. Civ. P. 307 (providing that a party may appeal from a judgment in which the court issues findings of fact on the ground that the judgment goes against the court's findings of fact); Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(1) (West Supp. 2006) (providing that an appeal may be taken from an interlocutory order appointing a receiver). In this case though, by the time that Pouya filed the motion to terminate the receivership, six months had passed after the order appointing the receiver was entered, much longer than the twenty days necessary for perfecting an appeal of an interlocutory order. *See* Tex. R. App. P. 28.1 (providing that an appeal from an interlocutory order is an accelerated appeal), 26.1 (providing that the notice of appeal in accelerated appeals must be filed within twenty days after order is signed). The order appointing the receiver is thus final and cannot be collaterally attacked. *See, e.g.*, *Sclafani v. Sclafani*, 870 S.W.2d 608, 611 (Tex. App.—Houston [1st. Dist] 1993, writ denied) (quoting *Benningfield v. Benningfield*, 155 S.W.2d 827, 827–28 (Tex. Civ. App.—Austin 1941, no writ)); *Loomis Land & Title Co. v. Diversified Mortgage Investors*, 533 S.W.2d 420, 424 (Tex. App.—Tyler 1976, writ ref'd n.r.e.).

**Have the Conditions Been Remedied?**

The equitable conditions necessitating the receivership include the need for a receiver to prevent the inequitable distribution of corporate assets and to protect the shareholders' interests. In order to do so, the order appointing the receiver explicitly requires the receiver to sell the remaining corporate assets and make a determination of the proper distribution of the assets among the shareholders. The order also states that the receiver may not distribute any corporate assets until the California litigation has been completed. Because all parties concede that the California litigation is ongoing, the receiver is prevented from distributing the assets and the equitable conditions necessitating the receivership have not been remedied.

Because the conditions necessitating the receivership have not been remedied, the district court did not abuse its discretion in denying Pouya's motion to terminate the receivership. Accordingly, we overrule Pouya's point of error.

### CONCLUSION

Having overruled Pouya's sole point of error, we affirm the district court's order.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed: August 31, 2007

13